# Messinger's Appeal.

1. A riparian owner may, *jure naturæ*, divert water from a stream for the irrigation of his land, but to what extent in a particular case depends upon whether it is reasonable, having due regard to the conditions of other property owners on the stream. But an uninterrupted and exclusive enjoyment of water in any particular way for 21 years affords a presumption of exclusive right in the party so enjoying it.

2. In 1842, A., the owner of meadow land through which a creek passed, built a low dam, dug a ditch therefrom across which he put a gate, and used the water to irrigate his meadows. This use, under a claim of right, continued for nearly 40 years. In 1881, B., the owner of mills located lower down on the creek, filed a bill to restrain such use of the water. It also appeared that for many years after the dam was built there was enough water in the creek both for irrigation and for the mills, so that no injury accrued to the latter by A.'s use of it, but the volume of water in the creek gradually diminished so that when the bill was filed the use of it made by A. was a serious damage to B. in the dry season, although the dam was no higher, the ditches no larger, and the amount of water used by A. no greater, than when the dam was first built:

   *Held*, that an injunction was properly refused, because A. had acquired a prescriptive right to the use of the water in the manner set out.

3. While it is true that the time from which the period is to be reckoned, in computing the duration of a continuous enjoyment, is when the injury or invasion of right begins, and not the time when the party causing it began that which finally creates the injury, yet this principle does not apply to the present case, because the injury here was not caused by a change in the dam or ditches, or by applying the water to a different use, or by any late act of A., but by a continuance of that which was done by A. 40 years before.

4. The work done by A. in 1842 was open, visible and under a claim of right, and B. could anticipate the ultimate effect thereof as well as A. The fact that B. did not foresee the probable diminution in the quantity of water in the stream, could not deprive A. of his right acquired by long continued enjoyment.

March 12th, 1885.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.  GREEN, J., absent.

APPEAL form the Court of Common Pleas of *Northampton county*, in equity :  Of January Term 1885, No. 107.

Bill in equity, in which Samuel S. Messinger, Mann & Allshouse, Jacob Walter, J. S. Rodenbough & Co., and William Zuch were complainants, and Hiram Uhler, Emanuel Uhler, and Jeremiah Jones were defendants, praying for an injunction to restrain the defendants from diverting the waters of a creek to the injury of the defendants, who were the owners of mills on the creek below the point of diversion.

The facts, as found by Howard J. Reeder, Esq., the Master, were as follows :  About the year 1842, the predecessors in title of the defendants built a low dam across the East Bushkill creek which flowed through their land, and cut a ditch therefrom by which the waters of said creek were let into their meadows for the purposes of irrigation.  A gate was placed across the ditch to regulate the quantity of water allowed to flow into the meadows.  This use of the water was made under a claim of right and continued for about forty years, the quantity of water used being regulated by the need therefor as determined by the meadow owners, and the gate being closed at times for several months in the year.  Prior to the year 1862, this use of the water did little if any injury to the complainants.  The Master reported as facts that the dam, at the time of beginning this proceeding, was no higher, the ditches no larger, and the quantity of water used no greater than when the dam was constructed, but that three acres less of meadow were irrigated in this manner at present than originally ; also that while the quantity of water thus presently used was less than formerly, yet this use had not decreased proportionately with the diminution in the quantity of water in the stream.

The complainants, whose mills were situated on the Bushkill creek below the confluence of the East and West Bushkill creeks, claimed that at the time when the water was first diverted to the meadows, and for many years thereafter, it did not appear to cause them any injury ; but that their present injury had accrued from the gradual diminution of the volume of water in the creeks, which, the Master reported, had decreased about 50 per cent.  They further claimed that owing to the diminished quantity of water in the creeks, the use made by the defendants of the water of the East Bushkill creek consumed the entire supply therefrom during the dry season of the year ; and that in 1877 they notified the meadow owners to cease the injury.

The Master reported in favor of an injunction to restrain the defendants from the use of the water between June 15th and September 1st of each year, excepting from Saturday at 5 P. M. until Monday at 6 A. M.

Upon exceptions to this report the court, SCHUYLER, J., held that under the facts as above the defendants had acquired a prescriptive right to the waters as set out, and entered a decree dismissing the bill; whereupon the complainants took this appeal, assigning for error the decree of the court.

*W. S. Kirkpatrick* (with whom was *B. F. Fackenthall*), for appellants.—While there is the right in riparian owners to irrigate their lands, yet this right must be exercised in subordination to the rights of others, and when there is a material abstraction and diversion of the water, even for that purpose, it is an injury which is actionable, or when threatened or likely to continue, enjoinable in equity: Washburn on Easements, 3d ed., *214; Wright v. Howard, 1 Sim. & S., 190; Wheatley v. Chrisman, 12 Harris, 298; Arnold v. Foot, 12 Wend., 330; Miller v. Miller, 9 Barr., 74. The defendants, however, claim a right by prescription because the dam and ditches are said to have existed since 1842. But as shown by the above authorities, the right to irrigate, so long as it is without substantial or material diminution of the stream, is a proper use of the water, and cannot create an easement however long used: Washburn on Easements, *235 and *240. The Master has found that prior to 1862, the taking of water by the defendants did no injury to the plaintiffs; and in 1877 the defendants were duly notified to discontinue their use. "Prescription does not begin till the act by which it is claimed has begun to work some injury to the right of the other party, of which he might be cognizant": Washburn on Easements, *p. 90; McCallum v. Germantown Water Co., 4 P. F. S., 58. As has been said, the use of the water for purposes of irrigation did the complainants no damage prior to 1862, but since that time the volume of water has been gradually growing less in the creeks until now it is only about one half as great as formerly, and the use of it made by defendants exhausts the entire supply from the East Bushkill in the dry season. In 1877, less than twenty-one years after the injury really began, defendants were duly notified.

*Edward J. Fox & Son* (with whom were *F. H. Lehr* and *C. Albert Sandt*), for appellees.—The defendants, as owners of the land through which the East Bushkill creek passes, have a right as appurtenant to the land to use a reasonable quantity of the water for purposes of irrigation: Howell v.

McCoy, 3 Rawle, 269; Mayor *v.* Commissioners, 7 Barr, 367; Weston *v.* Alden, 8 Mass., 136; 3 Kent Com., 439; Miller *v.* Miller, 9 Barr, 77; Hoy *v.* Sterrett, 2 Watts, 327. The defendant's right by prescription to the use now made of the water, is also clear. The dam and ditches were made in 1842, and exist now just as they did then. It is well settled that such a continued, uninterrupted and exclusive enjoyment as has been shown in this case, affords a conclusive prescriptive right: Strickler *v.* Todd, 10 S. & R., 69; Darlington v. Painter, 7 Barr, 473; Wheatley *v.* Chrisman, 12 Harris, 303; Warren *v.* Hunter, 1 Phila., 415; Gehman *v.* Erdman, 15 W. N. C., 278. The Master, after finding that the dam and ditches were erected, as they exist now, in 1842, decides that because the defendants failed to prove that the taking of the water by the dam and ditches caused no injury to complainants, and did not cause a material diminution of the stream, their right is incomplete. We claim, however, that under the authorities such proof was not necessary: Washburn on Easements and Servitudes, pp. 90, 100; Angell on Water Courses, § 219*c*; Brace *v.* Yale, 10 Allen, 441.

Chief Justice MERCUR delivered the opinion of the court, October 5th, 1885.

This is an attempt to enjoin the appellees against the use of the water of a small stream, which flows through their lands. It unites with another stream of about the same size, in forming the larger one on which the appellants own lands and mills some six miles below the junction of the two smaller streams. The complaint is that the appellees so use the water of the stream on their lands, as to greatly lessen the flow thereof, during a portion of the year, to the mills of the appellants, to their injury. That such is now the effect of the appellees' use of the water, in a dry season, when the streams are low, is undoubtedly correct.

It is a well recognized rule that a riparian proprietor may, *jure naturæ*, divert water from a stream for domestic purposes, and for the irrigation of his land; but to what extent he may do the latter in any particular case, depends on whether it is reasonable, having due regard to the condition and circumstances of other proprietors on the stream; he should not so divert it as to destroy or materially diminish or impair the application of the water by other proprietors: Washb. on Easements *240; Miner *v.* Gilmour, 12 Moore, P. C., 155; Elliot *v.* Fitchburg R. R. Co., 10 Cush., 191; Embrey *v.* Owen, 6 Exch., 353.

The present case involves not only the question of the right of the riparian owner to divert the water at the time it was

[Messinger's Appeal.]

first done, but if it was then wrong, the further question whether the right so to do, has not been exercised and enjoyed so long as to make valid the continued exercise thereof?

What then are the controlling facts found by the Master? They are, that about forty years before this bill was filed, the predecessors in title of the appellees built a low dam across the stream, and cut a sluice or ditch therefrom by which the waters were led into their meadows adjoining. A gate was put at the entrance of the ditch by which the quantity allowed to flow could be checked or shut off when desired; this use of the waters under a claim of right, has continued for about forty years, whenever the owners of the meadows thought they needed watering. It did not flow constantly over the meadows, as there were times when for several months, they did not need the water, yet during that portion of each and every year, when the growth of the grass would be promoted by irrigation the water was so used. Such use of the water was continuous and uninterrupted except when they did not want it, and closed the gates. He further found that the dam is no higher, the ditches no larger, nor the quantity of water diverted any greater than when the dam was originally constructed. On the contrary that three acres less of meadow land are now irrigated than while it was in possession of the former owners; that a number of ditches through which the water formerly flowed for irrigating purposes are now abandoned and closed; that the water now taken from the creek is less than was formerly taken, but it has not decreased proportionately with the diminution of water in the creek.

At the time the water was first diverted from the stream, and for many years thereafter it does not appear to have caused any injury to the property now owned by the complainants. The injury results from the gradual diminution of the volume of water flowing in the stream, which has been the case for several years. While the dam which diverts the water remains no higher, and the ditches which led the water from the stream, and returned it thereto, are unchanged, and the appellees use less water than formerly, yet the appellants claim in consequence of the diminished flow of water in the stream, the effect of the diversion, at first harmless, has now become injurious, and therefore the use of the water should be enjoined against. In support of this view the general rule as declared in Washb. on Easements, § 49 is invoked that the time from which the period is to be reckoned in computing the duration of a continuous enjoyment is when the injury or invasion of right begins, and not the time when the party causing it began that which finally creates the injury.

13 OUTERBRIDGE—19

The correctness of this rule may be conceded yet it is not applicable to the facts of the present case. If the injury here was caused by a change of the dam or of the ditches, or by suffering the latter to become filled up or clogged: Polly *v.* McCall, 37 Ala., 20, or by applying the water to a different use, or if the injury was caused by any late act, either of omission or of commission on the part of the appellees, it might be said they had previously only begun the work which caused the injury; but such is not this case. Here the whole action and work of the appellees is a continuance only of that which was done on the ground forty years ago, and the water continues to be used for the same purpose now as then.

It is held in Strickler *v.* Todd, 10 S. & R., 63, to be well settled law, if there has been an uninterrupted and exclusive enjoyment for more than twenty-one years of water in any particular way, it affords a conclusive presumption of right in the party so enjoying it, equal to a right by prescription. The same rule is substantially declared in Hoy *v.* Sterrett, 2 Watts, 327; Darlington *v.* Painter, 7 Barr, 473; Wheatley *v.* Chrisman, 12 Harris, 303. The law presumes a grant of the easement, the extent of which is measured not by the actual or average depth of the water at any given point, but by the nature and extent of the obstruction itself: Gehman *v.* Erdman, 15 W. N. C. 278. When one uses an easement whenever he sees fit without asking leave or without objection, the use is adverse; and an adverse enjoyment for twenty-one years gives an indisputable title to the enjoyment: Garrett *v.* Jackson, 8 Harris, 331.

The work on the ground was not only under a claim of right, but it was open, visible, and notorious. The parties who owned the property below could foresee and anticipate the ultimate effect of the diversion of the water as well as the parties who caused it. The fact that they may not have foreseen the probable diminution of the quantity of water which would flow in the stream, cannot deprive the appellees of any of their rights arising from their possession and enjoyment of the water for nearly twice the number of years necessary to give a right thereto by prescription.

                                        Judgment affirmed.