## John T. Hogg v. Connellsville Water Company, Appellant.

*Negligence—Trespass—Diversion of water—Water company—Damages.*
  In an action against a water company to recover damages for injuries to land caused by diversion of water from a stream, the case is for the jury where the evidence for the plaintiff tends to show that the defendant diverted from its regular channel a considerable quantity of water which otherwise would have flowed through and over plaintiff's land, lying on either side of the stream below the point at which the water was diverted, and that in consequence of such diversion plaintiff sustained injuries to his land.

Argued May 13, 1895. Appeal, No. 47, July T., 1894, by defendant, from judgment of C. P. Fayette Co., June T., 1889, No. 32, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Trespass to recover damages for injuries to land caused by the diversion of water. Before SLAGLE, J., specially presiding.

At the trial it appeared that in 1883, defendant constructed

a dam across McCoy's run above the property of plaintiff. In 1890 a pumping station was established on the east bank of the Youghiogheny river. Plaintiff claimed damages for injury to pasture lands, and also for injury to his mill located on the Youghiogheny river. About the time defendant commenced using this water plaintiff leased his mill property for ten years, with the privilege of entering upon to make improvements and repairs, and agreeing to make necessary repairs during the term on the building, gristmill, forebay, mill-race, water wheels and water power. Plaintiff produced evidence which tended to show that the rental for the pasture lands had fallen off by reason of the taking of water by defendant. He also produced evidence tending to show that he had spent considerable sums of money to maintain the water power of his mill, and that such expenditures were made necessary by the diversion of water by defendant.

The court charged in part as follows :

" In this case Mr. Hogg was in the occupancy of the property himself, and he had used it for many years before for pasturage purposes and nothing else. He has used it ever since the dam was constructed on this stream for the same purposes, and, therefore, it seemed to me, that in reference to that, the question was simply how much has he in these last ten years and a half been damaged by the want of the water which has been taken away from him by the other party.

" Now, in reference to that, there is another matter that possibly better be mentioned here : A man doesn't own the water that runs through his property, he simply has a right to use it, and each man along a running stream has a right to use the water for his own purposes, not inconsistent with the rights of his neighbor. He has no right to divert it. He can use it as it passes through, he can take out of the stream as much as is necessary for the ordinary purposes of his property, but he cannot divert it so as to turn it into another and different channel.

" After he has made use of the water, all the rest must be allowed to run in its ordinary course, so that his neighbors can have a similar use as it passes by them ; and, therefore, when you come to estimate what the damage to Mr. Hogg was by the interference with the running of this water, you don't undertake to estimate the value of that water, but simply the use of it to

Mr. Hogg, and what use of it has he been deprived of by the act of these parties.

" It might be that a stream was so large that the diversion of a part of it wouldn't interfere at all with all the use that a man might be able to make of the water as it passed through him, and in that case, if a man above on a stream takes out water to any extent, but leaves enough for his neighbor, his neighbor is not harmed, and therefore cannot recover any damages. He might possibly be entitled to nominal damages for the taking away of the water, but it would be only nominal.

" So the question for you to consider here upon this testimony is, was Mr. Hogg injured by being deprived of the water that came down this run, by the making of this dam, and, if he was, to what extent. And, as I said, he, it appears, used that all this time and before for many years for pasturage purposes.

" [If the property had been rented before, and if he was unable to rent it for as much afterwards as he was before, you would have a definite means of determining the measure of his damages, because there would be something which is a mere matter of calculation. But occupied as it was by Mr. Hogg. upon which he was carrying on a business such as has been stated, there is no means of getting at the exact loss to him, because it is like any other matter of business.] [17] . . . .

" He has given you the number of cattle that was kept there and the prices for pasturing them, and has shown to you that there were some people complained about the want of water,. and you probably know that pasture lands without water, or without sufficient water, would not be as valuable as if they had a sufficient quantity of water. . . .

" [On the other hand, the defendant company has a number of witnesses who say that, in their judgment, the plaintiff was not injured at all; that there was plenty of water there after that, and that he lost nothing by reason of the want of water. So you will take all that, then, and determine what would be a fair and just compensation to Mr. Hogg for the deprivation of this water upon his land, considering the use to which he was putting it at the time, and has been putting it ever since.] [18]

" [Having fixed that element of damages, you will then go to the other—that is, to the mill. And you will remember that when the case first opened there was some discussion as

to what was the proper testimony to be given in the case. A lease was offered in evidence, Mr. Hogg having leased the property, and if he got the same rent afterwards that he got before, of course he wasn't injured in the mill. That is very simple and plain, and when the suggestion was first made I was disposed to rule that Mr. Hogg could have no element of damage in that. But the counsel pointed out the fact that this lease was made with the condition that Mr. Hogg was to keep the race course—the mill race—in condition to supply a flow of water, as heretofore, and that seemed to me to be as if he had guaranteed it. For instance, if he had rented it for the same amount as he had rented it previously, and guaranteed the same amount of water and it wasn't supplied, and the mill lay idle for that reason, why, there would be a loss upon that, and therefore I allowed them to prove what additional cost there was in maintaining this flow of water by reason of the loss of water in the McCoy run, and that is a point you will determine—not what it cost to keep the race open, but what amount of that cost was caused by a want of water coming from McCoy's run.] [19]

"Now, the testimony was that there had been in these ten years,—Mr. Kerr, I think, was the name of the gentleman who testified—that during these ten years they had expended $1,661, I believe that was the amount, for keeping this race clean, and that Mr. Hogg had allowed $50.00 in addition to that for time that the mill was idle by reason of the want of water. That seemed to be coming nearer to a matter of calculation than the other. Some of the other witnesses testified that it would cost from $150 to $200 a year, they said, for keeping this race clean each year. Mr. Hogg said that he had no account of his expenses, but it seemed that Mr. Kerr had. Now, this $1,661—of course the $50.00 was a loss of rent, and if properly allowed he would be entitled to recover that as damages here—of the $1,661, Mr. Kerr said $450 was expense caused by the flood of 1888, and that, it is not claimed by the counsel, was a part of the expense of keeping open his mill-race. Then, there was evidence in the case that this mill-race always required some attention; that it always required some work, and that that ought to be deducted from the $1,661. It seems to me that that would be reasonable; that every mill-race would require some work. The wit-

nesses that were called on the part of the plaintiff, however, testified it would have been very little—very little on that account; that, in years immediately preceding 1883 and the building of this dam, I think one of them said, one year at least, they paid nothing. You have a right to consider all of this testimony, because there is testimony on both sides about that, and you have a right to use your own judgment as to whether anything ought to be deducted on that account or not.

" Then, the claim is that this work that was done—this $1,661 worth of work that was done at the dam and in the opening of the race immediately around the dam, that it was necessary, that they had to deepen it because there wasn't so much water coming in as heretofore, for the reason that they didn't get the water from McCoy's run, and that, therefore, they had to deepen the race and widen it to get a better flow of water from the river. They claim that whatever was necessarily so expended for that purpose would be a proper element of damages in this case, whether it was all caused by the run or not. Whatever was caused by the run—that is, a lack of water in the run— would be a proper element of damage and ought to be allowed to Mr. Hogg in this case. Now, the testimony of Mr. Kerr, I believe, is, that that work was necessary. I believe there was another gentleman testified to the same effect, that it was necessary in order to get water to the mill from the river, because of a loss of water in the run. If that is so, he is entitled to that, or so much of it as you may find was caused by a want of water in the run, which was kept back from McCoy's run by this dam, and that is the measure of his damage—the measure of his rights in this case. For that he is entitled to recover. He is entitled to recover a verdict at all events for what would be called nominal damages, and, in addition to that, any damages that he has shown here by the evidence to have been caused by the deprivation of the water running through his lands by means of the dam erected by the defendant company."

Plaintiff's points were among others as follows :

" 1. That under the evidence the plaintiff is entitled to recover at least nominal damages. *Answer :* This is affirmed." [1]

" 4. That, if the jury should find that the plaintiff is entitled to damages, they should estimate them from the date of the taking of the water down to the date of this trial. *Answer :* This is affirmed." [2]

Verdict and judgment for plaintiff for $1,200. Defendant appealed.

*Errors assigned,* among others, were (1, 2, 17, 18, 19) above instructions, quoting them.

*R. E. Umbel,* of *Boyd & Umbel,* for appellant. Plaintiff was not in actual possession of the premises. The landlord of a tenant for years cannot maintain trespass against a stranger, though the act done be injurious to the reversion : Bedingfield v. Onslow, 3 Lev. 209 ; Torrence v. Irwin, 2 Yeates, 210 ; 1 Archbold's Nisi Prius, 302 ; Ward et al. v. Taylor, 1 Pa. 238 ; Ives v. Cress, 5 Pa. 118 ; Lewis v. Carsaw, 15 Pa. 31 ; Clark v. Smith, 25 Pa. 137 ; Weitzel v. Marr et al., 46 Pa. 463 ; McNaught v. Swing, 1 Chest. 467 ; Nyman v. Sullivan, 3 Kulp, 345 ; Collins v. Beaty, 148 Pa. 65 ; Stephenson v. Brown, 147 Pa. 300.

*W. G. Guiler, Lindsey & Johnson* and *W. A. Hogg* with him, for appellee, cited : Clark v. Penna. R. R., 145 Pa. 438 ; Angell on Water-Courses, 135.

PER CURIAM, May 27, 1895 :

In view of the facts which the testimony in this case tended to prove, there is nothing in either of the nineteen specifications of error that requires a reversal of the judgment. It is conceded that, for the purpose of supplying water to the people of Connellsville for domestic and other purposes, defendant company diverted from its regular channel a considerable quantity of water which otherwise would have flowed through and over plaintiff's lands, lying on either side of the stream below the point at which the water was diverted. It was also shown by competent evidence that, in consequence of said diversion of the water, plaintiff sustained damages. Without referring in detail to the testimony bearing on that and other questions involved in the issue, it is sufficient to say that it presented a proper case for the consideration of the jury ; and it was fairly submitted to them, by the learned judge who specially presided at the trial, with substantially accurate and adequate instructions. We find nothing in either of the specifications that requires discussion.

Judgment affirmed.