# James Irving's Executors *v.* The Burgess and the Town Council of the Borough of Media, Appellant.

*Waters—Rights of upper and lower riparian owners.*

The right of a riparian owner is qualified by the rights of lower riparian owners, he cannot sell water to a nonriparian owner nor can he possess himself of the whole of the water. It is the qualified right of riparian ownership that adds value to all land along a stream.

It follows therefore that a lower riparian owner cannot be deprived lawfully of the right to the natural flow of a private stream by the appropriation of the stream by an upper riparian owner for the purpose even of supplying the natural wants of a community, not having equal riparian rights, without compensation being first made or secured. The fact that the upper riparian owner is a borough authorized to carry on the business of a vendor and distributor of water cannot affect the principle.

*Prescriptive right to water measured by original use.*

An uninterrupted exclusive use and enjoyment of water in any particular way above twenty-one years affords a conclusive presumption of right in the party so enjoying it equal to a right of prescription. The extent of this prescriptive right is measured, however, by the extent of the enjoyment and is confined to the right as exercised originally.

*Continuing tort—Successive actions—Diversion of waters—Eminent domain.*

Successive actions ex delicto would lie as between private individuals if damages were claimed of the defendant for water diverted by a riparian owner in excess of a right under a presumed grant; and such diversion is none the less a tort because the defendant has the right of eminent domain, if the conditions upon which this right may be exercised have not been complied with.

*Tort—Action in different rights.*

Where a plaintiff has different interests in possession and reversion he may recover in one action for an injury affecting both.

*Diversion of waters—Measure of damages.*

The action being for damages to a mill owner by reason of diversion of water and consequent loss of power to run the mill it is proper to

allow recovery upon the basis of the cost of supplying power to take the place of that of which plaintiff was deprived during the whole period covered by the action.

*Diversion of waters—Quantity taken—Evidence.*

Where in an action for injuries resulting from diversion of waters it was essential to prove the quantity taken during the period covered by the action and as to which approximation only was possible, it was proper to permit plaintiffs to show by defendant's book the quantity taken the first year where a record was kept with other evidence tending to show that this quantity was more or less than that taken in preceding years, such being a proper and reasonable method of proving the fact directly in issue.

Argued Nov. 23, 1898.    Appeal, No. 173, Oct. T., 1898, by defendant, from judgment of C. P. Delaware Co., Mar. T., 1894, No. 154, on verdict for plaintiff.    Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed. Opinion by RICE, P. J.

Trespass.    Before CLAYTON, P. J.

It appears from the evidence that the plaintiff at the time of the commencement of this action, on January 31, 1894, was the owner of a tract of land of about one hundred acres, situate on both sides of Ridley creek with his title extending to the middle of the creek.    He owned a large textile manufactory situated on his land which obtained a part of its power from the fall of the creek amounting to about forty-horse power.    The mill was operated by him under the trading name of James Irving & Son.    He had no partner.    Separate accounts were kept of the manufacturing business, for the purpose of measuring the amount of compensation to his son, William A. Irving. The mill was rented to the manufacturing business by annual leases.    He had the right to the use of the waters of the creek as a riparian owner, and he had also devoted the power of the creek to the artificial use of furnishing power to his mill.    The defendant borough owned a tract of land on the same creek higher up the stream.    In 1872 the borough located a pumping station on this land and commenced to pump water to the inhabitants of the borough for general uses.    The riparian land belonging to the borough is outside the borough limits.    There was evidence tending to show that the amount of water pumped by the borough in 1872 was comparatively small and that the consumption increased continuously after that time; also that the

borough had recently begun to furnish water for a district outside of the borough, some of which is within the watershed of Ridley creek and some of it within another watershed. The statute of limitations was pleaded by the defendant.

The court below admitted under objection and exception the following offers of evidence by the plaintiff:

[Henry Green, a witness for the plaintiff, to testify to the amount of water pumped from Ridley creek after the commencement of the suit, and including in the amount, water which was pumped to the Pennsylvania Training School.] [1]

[James Moss, a witness, to testify as to the conditions of the waters of the creek at a period eighteen years and more before the commencement of the suit.] [2]

[Alfred F. Dawson, a witness called by the plaintiff to testify to a test of a boiler made at the plaintiff's mill in March, 1896, two years after the commencement of this suit.] [3]

[The trial judge refused to permit defendant to show by Samuel J. Cochran, a real estate expert, the rental value of plaintiff's property. Bill sealed for defendant.] [4]

The court charged the jury, inter alia, as follows:

[The plaintiff claims the right to take the water of Ridley creek for its corporate purposes by virtue of the grant from the state of its right of eminent domain.] [5] . . . .

[The defendants here have made a sad mistake, they have not committed an intentional wrong, but they have made a mistake, which at the time they took this water I suppose was a natural one, for at that time when they completed their works and took this water, it appeared that it had no visible effect upon the flow of the stream, and the owners of the properties situated below did not notice that their rights had been interfered with. They did not come into court and ask for a jury to assess the damages, and the borough did not deem it necessary to give security for what they supposed was a merely nominal interference with their rights. That was the position when the water was first taken, but unfortunately for the borough it has grown to be a pretty large town, and they have not only supplied themselves with water, but they are also supplying their neighbors outside of the borough limits, and there is nothing to prevent them from annexing all the surrounding

territory if the future should warrant it, and there is nothing to hinder them, if they have the right to take the water, from taking it all, and it has now developed according to the plaintiff's case to be a serious injury to them.] [6] . . . .

[Now if this company had taken the same amount of water by the same pumps, or pumps similar to them, during the whole twenty-one years, they would have an undoubted defense upon their prescriptive right to take it, but unfortunately for them it appears that when they commenced the exercise of this right, they did not take nearly as much water as they do now. At that time they gave no water to the surrounding territories; they only supplied the public buildings and a few inhabitants of Media, and it seems to me that if you are satisfied that for over twenty-one years they have taken a certain amount of water, you may give them credit for that prescriptive right, but I say to you that it cannot be extended one gallon beyond what they took twenty-one years ago.

If they have taken more during the past twenty-one years than they took when they first commenced, and it is undoubtedly true that they have by the evidence, then they are liable to this action, but when you come to consider the damages, you may, if you see proper, allow them the right to take as much as they took twenty-one years ago, but no more. As to what they have taken beyond that, if that has inflicted any damage upon the plaintiff, they must pay for it whatever the damage is. Now I wish you, gentlemen, to particularly understand what I say about this claim for a prescriptive right. I can only say that if you find that the defendants take no more water from this stream than they took twenty-one years ago, then it would be a defense. If you find that they have taken more water and by different means and by additional and more powerful pumps, and by an extension of their works than they did twenty-one years ago, and that has resulted in an injury to the plaintiff, then it is only a defense so far as a reasonable allowance should be made for what they took twenty-one years ago is concerned. Twenty-one years' peaceable exercise of the right presumes the existence of a grant, but the presumed grant cannot be greater in extent than what it was at the commencement of the twenty-one years; that right under a prescriptive claim must be measured by the enjoyment of it at the time the prescrip-

tion commenced, it cannot be used in a different or more extensive manner.] [7]

Plaintiff submitted certain points, which points and answers were as follows:

[1. It has been the legal right of the plaintiff, as a riparian owner, during the time covered by this suit, to receive the waters of Ridley creek at his mill, undiminished in quantity, and if the jury believe that the defendant has pumped out of said creek and distributed through the borough of Media and vicinity, the waters of the said creek to the injury of the plaintiff, resulting from such diminution, the verdict should be in favor of the plaintiff for compensation therefor during six years prior to the commencement of this action. *Answer:* That is affirmed.   That is about what I said to you.] [8]

2. The defendant has no legal right to take any parts of the waters of Ridley creek and convey said waters away from said creek and distribute them for consumption in the borough of Media and vicinity, and is under a legal liability to compensate the plaintiff for all injuries to him by reason thereof, including not only the removal of the waters themselves, but the interference with the actual flow of the stream, and this during the six years immediately preceding the commencement of this suit. *Answer:* Gentlemen, that is also affirmed, it seems to be a correct statement of the law.] [9]

[4. A riparian owner has no legal right to remove waters of a creek away from the riparian lands and the removal of the waters of the creek by the defendant to the borough of Media is not justifiable as the exercise of a riparian right, and the defendant is liable to make compensation to the plaintiff for six years prior to the commencement of this suit, for all injuries to the plaintiff resulting from such removal, and resulting from the interference with the flow of the stream by retaining and discharging the waters of the creek in producing such removal. *Answer:* That is also affirmed.] [10]

Defendant submitted certain points, which points and answers were as follows:

[1. The borough defendant, by virtue of the power given under the Act of April 6, 1854, P. L. 301, having constructed waterworks and appurtenance on Ridley creek, to furnish the requisite quantity of water for the full supply of the necessary

demands of the inhabitants and public buildings within said borough and for this purpose appropriated the water of said creek, there can be no recovery in this action if the jury find that this power has been exercised continuously for twenty-one years before the commencement of this suit.  *Answer :* I decline to affirm that point, gentlemen, but refer to what I said in my general charge.  You may give them credit for the quantity that they pumped up more than twenty-one years ago if they have continued to use that, but if they exceeded that they are liable for the excess.  We have very little or no evidence I think, or very little at least, of the amount of water that they took twenty-one years ago.  They were then located upon a tributary and it was from another stream they pumped.

Mr. Hall: They pumped the entire stream and the weir measurements showed it.

The Court: How much was it?

Mr. Hall: Something over 100,000 gallons.

The Court: They appropriated that stream over twenty-one years ago and for the loss of that stream the plaintiff cannot recover but for the loss from the main body of the stream I think they can.  Now do you understand me?  From 100,000 to 170,000 gallons a day was pumped from the stream twenty-one years ago, it is a little stream that runs into Ridley creek, I am inclined to think that the plaintiff has lost his right to that.] [11]

[2. If the waters furnished by the borough of Media under the act of June 10, 1885, entitled, "An act authorizing boroughs to supply and to make contracts for supplying water outside the limits of said borough," outside of the borough is found to be so small in quantity as not to materially diminish the flow of the stream, then there can be no recovery in this case.  *Answer :* I decline to so charge you, gentlemen.] [12]

[3. The borough of Media, the defendant, had the right to use the water of this stream for the use of the inhabitants of the borough and to the Wallingford Water Company even though this act did cause damage to the plaintiff in the use of his land and mill property below, such loss to the plaintiff is damnum abseque injuria and no recovery can be had for it.  *Answer :* That is damages without a remedy an injury for which the law affords no remedy is the meaning of this Latin phrase.  I decline to so charge you.] [13]

[6. The borough defendant being the owner of the water power and lands on Ridley creek has the right, for the use of its inhabitants and to supply the public buildings, to take the water from the creek for domestic and other purposes, provided it is not diverted over the watershed of the creek, and for such taking there can be no recovery. *Answer:* I decline to so charge you, it cannot be either affirmed or negatived without great qualification and I decline to either affirm or negative the point for this reason.] [14]

[7. The defendant having shown that it is an owner of property upon the creek to which a public road leads, and, also that its streets lead to tributaries of the said creek, there can be no recovery in this case unless the plaintiff can show that there is a decrease in the volume and power of the stream by other than the several necessities of the inhabitants of the watershed. *Answer:* I decline to so charge you.] [15]

[8. The borough defendant having entered upon the creek and commenced the diversion of the water more than twenty-one years before the suit was brought the law presumes that compensation has been made for any damage sustained by the plaintiff, or that compensation has been adjusted by mutual agreement. *Answer:* I decline to so charge you.] [16]

[9. The evidence being in this case that the mill property of James Irving was rented to the firm of James Irving & Son, during the period covered by this suit, there can be no recovery in this case unless it can be shown that for six years prior to suit brought, there has been a reduction in the rental value by reason of the diversion of the water. *Answer:* I decline to so charge you; all difficulty that can possibly arise out of facts stated in this point has been overcome by the stipulation and the offer the plaintiffs have made.] [17]

[11. The defendant, under the power given by the legislature, having taken the water of Ridley creek under the right of eminent domain, the damages must be assessed to the plaintiff in the manner provided by the act of assembly under which this power was given, and the plaintiffs cannot recover in this form of action. *Answer:* I decline to so charge you as I have already said to you that the plaintiff has not complied with the conditions necessary to give him the state's right of eminent domain.] [18]

132, (1899).]          Charge of Court—Arguments.

The jury rendered a verdict of $1,605.85, which by stipulation filed was reduced to $1,000 and judgment entered on the verdict. Defendant appealed.

*Errors assigned* were (1-4) in admitting certain offers of testimony on the part of plaintiff under objection by defendant, reciting said offers. (5-7) To portions of the judge's charge, reciting same. (8-10) Answers to plaintiffs' points, reciting points and answers. (11-18) In not affirming defendant's points, reciting points and answers.

*Geo. E. Darlington* and *E. H. Hall*, with them *V. Gilpin Robinson*, for appellant.—The water from the tributary and this creek has always been taken by the appellant under a claim of right based upon what is said by Chief Justice GIBSON in Mayor v. Commissioners, 7 Pa. 348.

Mr. Chief Justice PAXSON in Haupt's Appeal, 125 Pa. 211, cites the language used by Chief Justice GIBSON in the case of Mayor v. Commissioners, with approval, and adds, "To some extent the same principle may be applied to what may be called a private stream."

The thirteenth assignment of error is to the refusal of the court below to affirm the defendant's third point; and if the appellant had the right of the use of the water of this stream for the ordinary domestic purposes of its inhabitants even if the stream was so small that this use made a loss to the lower riparian owner, it is damnum absque injuria, as is held in Penna. R. Co. v. Miller, 112 Pa. 34, and Clark v. R. R. Co., 145 Pa. 438.

The defendant borough is a riparian owner under the authority of the laws of the state. Its title as such is not impeachable. Its inhabitants are riparian dwellers on Ridley creek. Hence the rights of the parties to this suit should be determined by their relative rights as upper and lower riparian dwellers and owners.

The case now before the court is an action of trespass, brought to recover damages for the diminution of the flow of the waters of Ridley creek for the period of six years from January 1, 1888, to January 31, 1894, the date of the commencement of the action.

The learned court erred in ruling that the borough was a

trespasser. Where property is taken under the right of eminent domain, the owner has the undoubted right to demand security for the payment of his damage, and both parties have the right to an assessment of damages as prescribed by the statute conferring the right; or where the statute is silent the remedy of the owner is by an action on the case. See Penna. R. Co. v. Mont. Co. Pass. Ry. Co., 167 Pa. 62, and Hankey v. Phila. Co., 5 Pa. Superior Ct. 148. But where the owner has acquiesced in the taking of his property without security first being given, and the payment of the damages assessed, in the method prescribed by the statute, he cannot treat the municipality as a trespasser. His remedy is (a) by an action of ejectment which may be treated as an equitable remedy, to enforce the assessment of damages for the permanent injury. See Oliver v. Railroad Co., 131 Pa. 408. (b) By an action on the case. See Hankey v. Phila. Co., 5 Pa. Superior Ct. 148.

The effect of the permissive entry is thus made the same as if a formal contract had been entered into by which the landowner had agreed to put the corporation in possession and accept as compensation such sum as might be awarded to him by proceedings under the general law. This protects the corporation in the expenditures made in consequence of its lawful entry on the land, while it secures to the owner the full measure of compensation to which he is entitled under the law for the entry and appropriation by the corporation. See Oliver v. Railroad Co., 131 Pa. 408, and Hankey v. Phila. Co., 5 Pa. Superior Ct. 148.

The same ruling has been made in the following cases : Heilman v. Lebanon Railway, 175 Pa. 188; Penna. R. R. v. Montgomery Co., 167 Pa. 62. See also the case of Logansport v. Uhl, 99 Ind. 531.

The learned judge erred in not holding that after twenty-one years a release from all damages was conclusively presumed: Wallace v. Church, 111 Pa. 164; Wheatley v. Chrisman, 24 Pa. 298.

A property owner who stands by for many years and permits the appropriation of his property in the exercise of a right of eminent domain and permits valuable improvements to be made, upon the assumption that no claim will be made for damages, is estopped from claiming that he did not agree : Logan v. Gar-

diner, 136 Pa. 588; Oliver v. Railroad Co., 131 Pa. 408; Heilman v. Railroad Co., 175 Pa. 188; Penna. Railroad Co. v. Montgomery Co., 167 Pa. 62.

He must be regarded as agreeing or consenting to the appropriation and is remitted to his statutory remedy for damages where such is given. The statutory remedy supersedes the common-law remedy.

The court, however, in the application of this principle to the case at bar, restricted the borough to the water taken when the stream was first appropriated, and charged the jury that the servitude could not be increased by enlarging the plant for the supplying an increase of inhabitants. This would have been correct and unanswerable, if the borough had acquired only such rights as sprung from the uninterrupted use of the water, and the court herein fell into error because of the refusal to recognize the principle established in Hankey v. Phila. Co., 5 Pa. Superior Ct. 148, that the easement had been acquired by acquiescence. Further the learned court would have been correct in this ruling, if, under the act, it had been necessary to take out a new jury and assess damages for each additional pump or pipe or inhabitant.

Such, however, were not the conditions. Under the act, the one appropriation vested in the borough the right to use the whole stream, and if the plaintiff had demanded security, and it had been given, and the damages assessed, there would have been but one assessment and that as of the date of the original appropriation.

We therefore claimed in this case that there could be no recovery upon three grounds:

1. By acquiesence. The claimant had waived his right to treat the borough as a trespasser, and could only enforce such rights as he had the statutory remedy.

2. As to the statutory remedy he was barred because he did not apply for a jury, within one year after the appropriation or within twenty-one years after the appropriation, whereby a grant was presumed coextensive with the condemnation.

3. After the lapse of twenty-one years the claimant was conclusively presumed to have agreed to waive damages and to have granted to the borough the rights which it claims to exercise under the acts of assembly, authorizing it to erect water

works, and to use the waters of the stream for the purpose of supplying the inhabitants of the borough of Media and the public buildings with water.

The learned court further erred in the ruling as to the waters taken under the provisions of the Act of June 10, 1885, P. L. 81. This act empowers any borough in this commonwealth authorized by law to erect and maintain water works for supplying water within its limits, to make contracts for supplying water outside of the borough limits: Hankey v. Phila. Co., 5 Pa. Superior Ct. 148.

*W. B. Broomall*, for appellee.—An upper riparian owner is responsible to the lower proprietor for injury occasioned by diversion of water other than for ordinary domestic purposes.

Has the defendant the right, as a riparian owner, to pump the waters away from the riparian land? Hartzall v. Sill, 12 Pa. 248; Wheatley v. Chrisman, 24 Pa. 298; Messinger's Appeal, 109 Pa. 285.

Where the riparian owner diverts or uses water not for ordinary domestic purposes, such as are inseparable from and necessary for the use of his land, but for manufacturing or other purposes, having no necessary relation to his use of his land, he is responsible to the lower proprietor for the injury thereby occasioned: Penna. Railroad Co. v. Miller, 112 Pa. 34; Clark v. Railroad Co., 145 Pa. 438.

The natural right of the lower riparian owner is to have the creek flow to him undiminished in quantity and unaffected in quality: Mayor v. Commissioners, 7 Pa. 348; Haupt's Appeal, 125 Pa. 211.

The pumping and distribution of water for compensation is not the exercise of the police power by the municipality. In respect to the question in hand, it is nothing more than if it were being done by a private corporation: Bodge v. Philadelphia, 167 Pa. 492.

An uninterrupted, exclusive enjoyment above twenty-one years of water in any particular way affords a conclusive prescription of right in the parties so enjoying it: Strickler v. Todd, 10 S. & R. 63.

But an easement cannot be enlarged beyond the extent of the original grant, neither can a prescriptive right be enlarged be-

yond the extent of the right as exercised twenty-one years ago: Turnpike Co. v. Piper, 77 Pa. 432.

Should the damages be awarded according to the common-law rule for injuries sustained during the preceding six years, or should they be awarded as in condemnation cases, in gross, for the exercise of the right of eminent domain: Glass Co. v. Water Co., 5 Pa. Superior Ct. 563, 578.

Where a railroad company owns land in fee through which a stream flows, and it takes water from the stream at a point on its own land for the purpose of supplying its locomotives, such taking is not under the right of eminent domain, but by virtue of its rights as a riparian owner: Penna. R. Co. v. Miller, 112 Pa. 34; Phila. & Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418.

While a city or borough or a company having the right of eminent domain may take a spring or stream of water to supply a municipality, it can only do so by making compensation to those who are deprived of the use of the water as provided by the constitution: Lord v. Water Company, 135 Pa. 122.

OPINION BY RICE, P. J., April 17, 1899:

This was an action of trespass to recover damages for the diversion of the waters of a private stream called Ridley creek. The defendant's waterworks are located on land which it bought for the purpose outside the borough limits. The main stream from which the water is taken, does not run through the borough, but one of its tributaries does. The plaintiff's mill is located on the stream about four miles below the defendant's pumping station. Other facts will be referred to as we proceed.

Without discussing each of the assignments of error separately, the principal questions in the case will be considered under the following heads: First, the defendant's right to divert the water, (*a*) as an upper riparian owner; (*b*) as a borough authorized by law to supply its inhabitants and those living in the vicinity with water for domestic and other ordinary uses; (*c*) by prescription; second, the plaintiff's remedy.

1. It is not pretended that the defendant's ownership of riparian land at the point where the water is pumped by it from the creek would, of itself and without more, be a defense to the present action. The counsel say they do not stand on the rights

of the defendant growing out of riparian ownership, but on the rights of the inhabitants within the limits of the territory drained by the creek and its tributaries, to take as much of the waters of those streams as they may at any time need for domestic uses, without being liable in damages to those below. They say that the borough is simply the agency through which the collective rights of the inhabitants are being exercised. The argument in support of the main proposition proceeds along these lines: There can be no ownership of flowing water; the right to take it for one's needs is a natural right; all that prevents any person from taking it is that he cannot have access to the stream without trespassing upon the lands of others; if he can have access to it where it crosses a highway, he may take as much as he needs for ordinary uses; the same must be true if he can get to the stream by permission of a riparian owner. The logical result of holding, without qualification, that all inhabitants of a particular district, who can obtain access in any lawful way to a private stream, may take as much water as they need for ordinary uses, would be, that the riparian owner may grant to nonriparian owners the same rights that he has. If this be so, he may admit as many to the same privileges as he pleases, and upon such terms as he pleases, even to the exhaustion of the stream. He may permit a water company, or a borough having the same powers, to erect its pumping apparatus and reservoir upon his land, and if the water company or the borough confines its distribution of water for pay to inhabitants of the district drained by the stream, lower riparian owners cannot complain. If the needs of the inhabitants of the borough should now, or at any future time, require all the water that comes to its plant, all might be taken, if the position of counsel be correct. The establishment of this doctrine, instead of conserving the natural rights of all the inhabitants of the district, would enable a part of the inhabitants, namely those dwelling in the borough, to appropriate the water to the exclusion of dwellers further down, whose natural rights, the counsel must concede, are equally as sacred. It would, moreover, be destructive of the rights of lower riparian owners to have the stream that washes their land " flow as it is wont without material diminution or alteration." The defendant's counsel defended their position with earnestness and ability, but we cannot avoid the conviction that a

process of reasoning which leads to such results must have a
fallacy in it somewhere along the line. Ownership of riparian
land does not include ownership of the water which flows over
or past it, it is true. The right which the owner has is to the
reasonable use of it as an incident to the land. For some pur-
poses connected with the enjoyment of the land to which the
right is incident (for example for domestic use and for watering
cattle), the riparian owner may divert, detain and even con-
sume the water. The lower owner's right is subject to this
well-understood qualification. But the upper riparian owner
has not in all respects an equal right thus to divert, detain or
consume the water for purposes, which, although the same in
kind, are in no way connected with the use of the land past
or over which it flows. These are elementary principles and
scarcely is it required that authorities should be cited in support
of them. It is sufficient to refer to one of the latest decisions of
the Supreme Court involving a consideration of riparian rights
in a private stream, where the language of Chancellor KENT in
Gardner v. Newburgh, 2 Johns. Ch. R. 162, is quoted with ap-
proval. " A right to a stream of water is as sacred as a right
to the soil over which it flows. It is a part of the freehold, of
which no man can be disseized, but by lawful judgment of his
peers or by due process of law." Speaking of Haupt's Appeal,
125 Pa. 211, Lord v. Water Co., 135 Pa. 122, and Clark v. R.
R. Co., 145 Pa. 438, 452, Justice DEAN said : " In substance they
hold that the riparian right is not an absolute ownership of the
water of the stream. This is not pretended. The riparian
owner could not sell the water to a non-riparian owner, nor
could he possess himself of the whole of it; such is not his right;
his right is qualified by the rights of the lower riparian owners.
But this qualified right appertaining to his property along the
stream adds to the value of the property:" Rudolph v. Penna.
R. Co., 186 Pa. 541. The riparian owner has in addition to
the natural rights which every one possesses, a property right
which nonriparian owners do not possess. In conferring upon
this borough the power to transact the business of a vendor and
distributor of water and for that purpose "to use the water from
any streams or springs within the limits of said borough . . . .
or elsewhere found," the legislature was careful to provide that
it should pay " to those interested a just and equitable compen-

sation for any damage by them sustained," and further, " that nothing herein contained shall authorize the borough authorities . . . . to enter on lands or appropriate the property of persons with whom an agreement cannot be effected, without first giving adequate security for any damage they may occasion, to be approved by one of the judges of the court of common pleas of Delaware county:" Act of April 6, 1854, P. L. 301. The act was intended, and is adequate, to provide for the necessities of the general public, and also to protect the property rights of individuals owning riparian lands. If the right of the riparian owner to the natural flow of a private stream is a property right, as it clearly is under all the authorities, he cannot be deprived of it lawfully by the appropriation of the stream by an upper riparian owner for the purpose even of supplying the natural wants of members of a community not having equal riparian rights, without compensation being first made or secured. The fact that the upper riparian owner is an incorporated water company or a borough authorized to carry on the business of a vendor and distributor of water cannot affect the principle : Craig v. Shippensburg, 7 Pa. Superior Ct. 526, and cases there cited.

2. The defendant's second position is, that it having entered upon the creek and commenced the diversion of the waters more than twenty-one years before suit was brought, the law presumes that compensation was made for any damage sustained by the plaintiff, or was adjusted by mutual agreement. Whilst refusing to affirm this proposition, the court instructed the jury that the continuous user of the water for the period of twenty-one years raised the presumption of a grant, but differed from the defendant's counsel as to the extent of the presumed grant. We cannot better state the ruling than by quoting from the charge : " I can only say that if you find that the defendants take no more water from this stream than they took twenty-one years ago, then it would be a defense. If you find that they have taken more water and by different means and by additional and more powerful pumps, and by an extension of their works, than they did twenty-one years ago, and that has resulted in an injury to the plaintiff, then it is only a defense so far as a reasonable allowance should be made for what they took twenty-one years ago is concerned." We are of opinion that this was

a substantially correct statement of the law applicable to the facts of the case being tried. The general rule of law is, that although the stream be either diminished in quantity, or even corrupted in quality, as by the means of the exercise of certain trades, yet if the occupation of the party so taking and using it have existed for so long a time as may raise the presumption of a grant, the other party, whose land is below, must take the stream subject to such adverse right: Bealey v. Shaw, 6 East, 208; Hoy v. Sterrett, 2 W. 327. "It is well settled, that if there has been an uninterrupted exclusive enjoyment, above twenty-one years, of water, in any particular way, this affords a conclusive presumption of right in the party so enjoying it, and this is equal to a right by prescription:" Strickler v. Todd, 10 S. & R. 63; Messinger's Appeal, 109 Pa. 285. There is no difference of opinion as to this; there is a right in the defendant based on the presumption of a grant, or (to state the proposition in another form) of an appropriation for which compensation was made. The question is as to the extent of the right. The defendant's counsel contend that it is commensurate with the powers of the borough under the statute; the plaintiff's counsel contend that it is to be measured by the user twenty-one years before suit brought. The borough, it is true, could have acquired the right to the whole of the flow of the stream by condemnation proceedings or by agreement with the riparian owners, but it was not required by the act of 1854 to take and pay for the whole, or none. So that it cannot be said that the lower riparian owners were bound to presume, that, when the borough located its works on the banks of the stream and began to pump the water, this was an appropriation of all of the water of the creek. See Glass Co. v. Water Co., 5 Pa. Superior Ct. 563, 578. They were affected with notice of its acts, and, after twenty-one years, are presumed to have granted the right claimed by the borough as evidenced by them. The owner is not affected by acts that do not bring to his knowledge, either actually or constructively, the assertion of a right adverse to him: Hughesville Water Co. v. Person, 182 Pa. 450, 454. Upon the same principle is it not correct to say, that in the case of a diversion or of a pollution of a private stream, the lower riparian owner is not affected with notice of the assertion of an adverse right, greater in extent than the acts of

the adverse claimant indicate? If, at the beginning, the latter take but 100,000 gallons daily, is the lower owner bound to take notice of the assertion of the right to take all the water of the stream? Our examination of the authorities has led us to a different conclusion from that reached by the defendant's counsel. " The extent of the presumed right is determined by the user on which is grounded the presumed grant; the right granted being commensurate with the right enjoyed : " Angell on Water Courses (7th ed.), 389. " The extent of the prescriptive right is measured by the extent of the enjoyment, and is confined to the right as exercised originally : " 28 Am. & Eng. Ency. of Law, 1012. " The user which originated the right" (to pollute a stream) " must also be its measure, and it cannot be enlarged to the prejudice of any other person : " Crossley v. Lightoweler, L. R., 2 Ch. 478, quoted in Gould on Waters, sec. 345. This doctrine is recognized in our own cases, and we discover no reason for refusing to apply it here : Darlington v. Painter, 7 Pa. 473 ; Mertz v. Dorney, 25 Pa. 519 ; Jones v. Crow, 32 Pa. 398 ; McCallum v. Germantown Water Co., 54 Pa. 40, 48 ; Chestnut Hill, etc., Turnpike Co. v. Piper, 77 Pa. 432. See also Bealey v. Shaw, supra, Prentice v. Geiger, 74 N. Y. 342, and Hogg v. Bailey, 5 Pa. Superior Ct. 426, 435. If, originally, the defendant had changed the course of the stream by turning it away from the lower owners, or by some other act, of which the lower owners had notice, had indicated a present purpose to permanently appropriate so much of the water of the creek as might not only then, but in the future, be required to supply the wants of the inhabitants, a different question would be presented.

3. The next question is as to the plaintiff's remedy. We suppose it will not be denied that if this were a dispute between two private individuals and during the period for which damages were claimed the defendant had diverted the water in excess of his right under a presumed grant, successive actions ex delicto would lie. But such diversion of the water is none the less a tort because the defendant has the right of eminent domain, if the conditions upon which this right may be exercised have not been complied with. See Glass Co. v. Water Co., 5 Pa. Superior Ct. 563, and cases there cited, and especially the cases of Lord v. Water Co., 135 Pa. 122, and Bethlehem Water

Co. v. Yoder, 112 Pa. 136. The plaintiff's laches might be a bar to relief in equity, but it would not be a bar to a common-law action. The measure of damages is another question. It was upon this question that the case of Hankey v. Philadelphia Co., 5 Pa. Superior Ct. 148, turned; the right of the plaintiff to maintain a common-law action was distinctly upheld. Nor can the defendant complain that the damages were not assessed upon the same basis as if the defendant had appropriated the stream in the exercise of the right of eminent domain for two reasons: First, the defendant persists in the claim (to quote from brief of counsel), that it has "the right to take the water out of the creek and its tributaries to supply the needs of its inhabitants and the public buildings, not under the right of eminent domain, but under the right which all of its inhabitants had and have to take water from the creek for domestic purposes." Second, after the verdict was rendered the court gave the defendant an opportunity to file a bond and to specify the extent of its appropriation, and ordered, that, if this was done, the verdict be set aside and a new trial granted. The defendant did not avail itself of this opportunity to have all the damages, retrospective as well as prospective consequent upon a permanent appropriation, assessed in one proceeding. Therefore, the principle upon which Hankey v. Philadelphia Co., and kindred cases were decided has no application.

This disposes of all of the questions raised by the assignments of error, excepting the first four and the seventeenth.

4. Where a plaintiff has different interests in possession and reversion, he may recover in one action for an injury affecting both; Gould on Waters, sec. 480. Especially is this true where the separation of the interests is a mere business arrangement, made for his own convenience, as, for example, charging one department of his business with so much rent. James Irving was the owner of the mill and the land upon which it was situated. He was, moreover, in possession and conducting the business during the period covered by the action. His executors claimed to recover damages for the loss of power to run the mill, consequent upon the defendant's tortious diversion of the water. They were allowed to recover upon the basis of the cost of supplying power to take the place of that of which he was deprived during the period covered by the action. This

was a proper method of arriving at the damages in such a case: Hogg v. Water Co., 168 Pa. 456; Glass Co. v. Water Co., 5 Pa. Superior Ct. 563, and see Hart v. Evans, 8 Pa. 13. The fact that William A. Irving, his son, had an interest in the profits of the business was not raised as an objection to the plaintiff's right to recover all the damages for the entire injury to the freehold as well as to the possession, until after the testimony was closed. The plaintiffs then offered to show that William A. Irving had no such interest in the possession as would entitle him to maintain an action; in other words, that he was a mere employee, compensated by a percentage. This was a discretionary matter and as the court refused to permit the evidence to be given, probably we ought not to assume the facts alleged in the offer. The fact remains, however, that William A. Irving was a party to the suit as one of the executors of James Irving and pressed for a recovery in accordance with the claim as above stated. This, taken in connection with his further stipulation given at the close of the trial, will fully protect the defendant against a second suit for the damages accruing prior to the bringing of the present suit. Under all the circumstances, therefore, we conclude that the court committed no error in the rulings complained of in the fourth and seventeenth assignments. We remark further with regard to the former assignment that the bill of exceptions does not distinctly show an offer to prove the rental value and a rejection of that offer.

5. It was necessary for the plaintiff to prove the quantity of water taken during the period covered by the action—1888 to 1894. This could only be done approximately because no record was kept prior to July, 1895. For the purpose of comparison the plaintiffs were permitted to prove (first assignment) by the record kept by the defendant, the quantity taken during the year beginning July, 1895. This, in connection with other evidence going to show whether the quantity was more or less than that taken in the immediately preceding years, was a proper and reasonably certain mode of proving the fact directly in issue.

Neither of the remaining assignments to the admission of evidence requires particular notice.

All of the assignments of error are overruled and the judgment is affirmed.