A. HINKLE, Appellee, v. J. T. AVERY, Appellant.

1. **Water Courses:** DIVERSION: INJUNCTION. In an action to enjoin the diversion of a stream of running water, it appeared that while the stream might not originally have flowed through the plaintiff's land, yet that for many years prior to the commencement of the action, and as a result of natural causes, it had taken such course, and that the change had been so gradual, and so remote from the present, as not to be traceable from its history as disclosed by the evidence. *Held*, that the stream had such a course over the plaintiff's land as to entitle him to maintain the action.

2. ———: WHAT CONSTITUTES. The stream in question had its source in three springs, from which its course was through a ravine for a few rods until it reached some low level land, where it widened until it reached the highway, lying between the land of the plaintiff and that of the defendant, where it was brought into such a compass as to pass through a culvert, and then onto the plaintiff s land, where it formed a pond. Beyond the pond the water flowed along a depression in the earth, and over the grass or sod, in a stream of irregular width, but before reaching the river, into which it emptied, the water came again into a channel called Crooked creek, and had a current that was visible. *Held*, that the water constituted a stream or water course, the channel of which could not be diverted by the defendant to the injury of the plaintiff.

*Appeal from Van Buren District Court.*—HON. CHARLES
D. LEGGETT, Judge.

SATURDAY, MAY 13, 1893.

ACTION to enjoin the obstruction or diversion of a
stream of water. There was a decree for the plaintiff,
and the defendant appeals.—*Affirmed.*

*Sloan & Brown* and *Work & Blake,* for appellant.

*Wherry & Walker,* for appellee.

GRANGER, J.—The plaintiff and defendant are own-
ers of adjacent farms, that of the plaintiff being·directly
west of the defendant's. On the dividing line, for a
part of the distance, is what is known as the "Batavia
Road." North of the lands owned by the parties is
land belonging to one Stoop. On the land of the
defendant are two springs, from each of which is a flow-
ing stream. On the land of Stoop, directly north of
the defendant's land, is a like spring, the stream from
which runs south and unites with those from the springs
on the defendant's land, and the stream thus formed
runs through the barn lot of the defendant to the
Batavia road on the line between the parties. It is the
course of this stream, from this point, over which
the contention in the case is. The plaintiff's farm con-
sists of two hundred and sixty-three acres; the sixty-
three acres being situated just across the Batavia road
at the point where the stream reaches it.

The averments of the petition show: "That from
time immemorial a natural water course or stream of
water, supplied in part by a never failing spring, has
flowed in a natural and well defined channel from the
premises of the defendant, in a westerly direction, over
and across the aforesaid sixty-three acres of the plain-
tiff's land, and from thence finding its way into the Des

Moines river, thus furnishing, where it flowed over the plaintiff's premises, a perpetual and bountiful supply of living water for the plaintiff's stock kept in said pasture, and being the only natural and continual supply of water above ground available for stock therein, and without which the value of such premises and pasture would be greatly and irreparably impaired." It is also averred that the plaintiff's land was used as a stock farm, on which is kept from one to two hundred head of cattle and horses, depending for water on the aforesaid stream. It is further averred that within the last few years the defendant has, by different methods, diverted the stream from its natural channel, so as to deprive the plaintiff of its legitimate use. The answer is, in its legal effect, a denial. It contains other averments, but, in view of the positions taken in argument, our statement of it is sufficient.

The appellant presents the questions for our consideration as follows: "*First.* Does the water from the spring form a stream with a well defined course, confined by banks, so that the defendant did not have any right to divert it, even if its course was over and across the plaintiff's premises? *Second.* Was the course of the water over and across the plaintiff's premises, as claimed by him, or wholly on the defendant's premises?" We will adopt the inverse order in considering the propositions, the latter being exclusively one of facts.

I. As bearing on this question, much testimony has been taken, and among the witnesses are those who have resided in the neighborhood of the stream for fifty years or more, and were among the first settlers of the state. Much of the testimony is directed to the flow of the water from the spring onto the defendant's farm at that early period; the spring on Stoop's place not then being in existence. By the aid of surveys and excavations it is

1. Water courses: diversion: injunction.

made to appear that quite a material change has been
made in the natural curvature of the earth because of
deposits and on account of the wash from the adjacent
hills, and it is a matter of considerable doubt, at least,
if the natural course of these waters has not been, to
some extent, changed thereby. But, however this may
be, and if it be conceded that originally these waters
naturally flowed along on the west side of the Batavia
road, and across the land of the defendant to the river,
it is a well established fact that for many years, and as
a result of natural causes, they have flowed across the
road onto and over the land of the plaintiff. This fact
has existed for so long a time, and, if the change in the
course of the waters ever came, it was so gradual and
so remote from the present, that the fact is not easily
traceable from its history as disclosed by the evidence.
From the history of this case we are led to believe that
the question of the flow of this water being otherwise
than as it naturally would be at the present time was
not thought of, or relied upon, as a significant fact in the
case until near the conclusion of the trial of the case in
the district court. This would not, of course, lessen
the importance of the fact, if true, but it has a value in
finding the fact where it is one of doubt. We are of the
opinion that the flow of the water was across the land
of the plaintiff, so as to justify the action, if the other
proposition is resolved in the plaintiff's favor.

II. It may be well to restate the proposition in
this connection: "Does the water from the spring
2. ——: what      form a stream with a well defined course,
constitutes.      confined to banks, so that the defendant
did not have the right to divert it, even if its course
was over and across his premises?" The proposition
presents two inquiries: *First*, the particular facts as to
the character of the stream, and, *second*, their legal
effect upon the rights of the parties. The water from
these springs runs a little more than a mile to the Des

Moines river. It starts and runs for a few rods in what may be called a ravine, when it reaches low, level land, and the stream widens. Further on, because of the construction of the public highway, it is brought into such a compass as to pass through a culvert, and then onto the plaintiff's land, on which is formed, in part at least by this water, a pond. Beyond this pond the water flows, not in a channel with banks, but along a depression in the earth, and over the grass or sod. It seems to be irregular in width, owing to the character of the ground, at some places quite narrow, and at others several rods in width. It has had, however, at all times the characteristics of a flowing stream, it may be said, a current that is visible and distinctly traceable. Before reaching the river the water comes again into a channel or small branch called "Crooked Creek," and thence into the river.

The legal contention arises over the definition of a "stream or water course," so as to come within the rule whereby one riparian owner can not divert it from its natural course to the damage of another such owner. The doubts as to the definition are induced by the language of the adjudicated cases. The appellant's theory is that, to constitute such a water course, there "must be a distinct channel or bed of a stream with well defined banks cut through the turf and into the soil by the flowing of the water, presenting on a casual glance to every eye unmistakable evidence of frequent action of running water, and not a mere depression; and such a flow must be necessary to prevent the flooding of a considerable tract of land." Definitions somewhat similar have been many times given. Kerr's Injunctions in Equity, page 251, uses this language: "As distinguished from water of a casual and temporary character, a water course is a flow of water usually flowing in a certain direction, and by a regular channel, having a bed, banks and sides, and possessing that unity of character

by which the flow on one man's land can be identified with that on the land of his neighbor." If we now look to the adjudicated cases to see the application of the general rule to the facts of particular cases, we may be aided to a proper application of the law to the case in hand.         *

The appellant cites us to *Gibbs v. Williams*, 25 Kan. 214, as a very conclusive case, and it would appear that his definition, as we have quoted it, is taken therefrom. The case deals with surface water, and aims to indicate the distinction between a water course and surface water from rains and melting snows collected into streams in ravines and depressions causing a temporary flow, but not of a character to be known as a water course. To this end the opinion employs language that, if literally applied, and given application to cases involving the flowage of water from springs and other streams, would override many well considered cases, and operate as a denial of what has long been considered established rights of riparian owners of land. The particular language, "with well defined banks cut through the turf into the soil by the flowage of the water," is mainly relied upon in this case. Reading that case with care, and in connection with *Palmer v. Waddell*, 22 Kan. 352, it will be seen that both cases deal with the exceptional question of when surface water caused by rainfalls constitutes a water course so as to take it out of the general rule as to surface water, and bring it within the rule as to water courses. In such a connection the language is apt, and its correctness would not be doubted. *Bloodgood v. Ayers*, 108 N. Y. 400; 15 N. E. Rep. 433, is another case cited by appellant, but the facts are widely different from this case. That was a case of percolating water. There was no flowing stream from the spring, and the case was determined upon an uncertainty as to facts, and not upon the rule of the appellant's contention. *Bark-*

*ley v. Wilcox*, 86 N. Y. 140, is another case of surface water, and the court defines a "natural water course" as "a natural stream flowing in a defined bed or channel, with banks and sides, having permanent sources of supply." This definition closely approximates the facts of this case. Some parts of the way the stream in question has no banks, and, in a literal sense, there may be no channel in places, but in the ordinary acceptance of the term there was a channel. The case of *Hoyt v. City of Hudson*, 27 Wis. 656, contains a definition not met, in a literal sense, by the facts of this case, but the language there used is as to surface water from rains and melting snow.

We now notice a few cases more closely allied to the facts of this case. In *Pyle v. Richards*, 17 Neb. 180, 22 N. W. Rep. 370, it is said: "When water has a definite source, as a spring, and takes a definite channel, it is a water course." The case quotes from *Shields v. Arndt*, 4 N. J. Eq. 234, as follows: "There must be water as well as land, and it must be a stream usually flowing in a particular direction. It need not flow continually, as many streams in this country are, at times, dry." In Gould on Waters it is said: "Surface water may be said to form a water course at the point where it begins to form a well defined channel with bed, banks or sides, and current." See section 263. It is in such a connection that much of the language relied upon by the appellant is used. The case of *Macomber v. Godfrey*, 108 Mass. 219, is a case in its material facts parallel to this. It was a brook running from the land of the defendant to that of the plaintiff. It was a well defined stream for a part of the way on the defendant's land. Before reaching the plaintiff's land the water spread out over the surface of the ground a few rods in width, and so ran upon and across the plaintiff's land, which was a level meadow, covering it several rods in width and irrigating it, and

in this shape passed onto the land of others. From the point where the water spread out on the defendant's land to a point beyond the plaintiff's land there was no "defined channel." A short distance beyond the plaintiff's land the water again formed a small brook, and ran to the river. In that case it was said: "If the whole of the stream had sunk into the defendant's soil, and no water remained to pass to the plaintiff's land except under the surface, it would have ceased to be a water course, and the plaintiffs would have had no right to it." It was held to be a water course with well defined bed and banks, with its usual course in a channel. The rule of the case is a salutary one. This case is not different in principle. In this case the water was spread out over a longer line, but it was not lost in the earth, nor was the identity of the stream lost. A case closely in point sustaining the rule is *Gillett v. Johnson*, 30 Conn. 180.

Our conclusion is that the stream in question is such a one that the plaintiff has the right to its enjoyment, and that because of its diversion the plaintiff's action was, by the district court, properly sustained. We are not aware of any adjudicated case against this conclusion when properly considered. The district court, by its decree, gave to each party one-half of the water in the stream, and of that the defendant should not complain. The judgment is AFFIRMED.