Day, J.
 

 It is well settled in this state that the right of the public to fish in the waters of Lake Erie and its bays is as fixed and complete as if those waters were subject to the ebb and flow of the tide, and that the public rights of fishing in the waters of the open, navigable public bays of Lake Erie are not limited within such public bays to the particular portions thereof which are navigable.
 
 Winous Point Shooting Club
 
 v.
 
 Slaughterbeck,
 
 96 Ohio St., 139, 117 N. E., 162, L. R. A. 1918A, 1142;
 
 Bodi
 
 v.
 
 Winous Point Shooting Club,
 
 57 Ohio St., 226, 48 N. E., 944;
 
 Sloan
 
 v.
 
 Biemiller,
 
 34 Ohio St., 492.
 

 It is also the law of Ohio that the ownership of land under the waters of nonnavigable marshes, ponds, rivers, lakes, and creeks carries with it the exclusive right of hunting and fishing, and all other property rights.
 
 Lembeck
 
 v.
 
 Nye, 47
 
 Ohio St., 336, 24 N. E., 686, 8 L. R. A., 578, 21 Am. St. Rep., 828. See, also,
 
 Administrators of Gavit
 
 v.
 
 Chambers,
 
 3 Ohio, 495;
 
 Walker
 
 v.
 
 Board of Public Works,
 
 16 Ohio, 540;
 
 Lamb
 
 v.
 
 Ricketts,
 
 11 Ohio, 311;
 
 June
 
 v.
 
 Purcell,
 
 36 Ohio St., 396;
 
 State
 
 v.
 
 Shannon,
 
 36 Ohio St., 423, 38 Am. Rep., 599;
 
 Beckman
 
 v.
 
 Kreamer,
 
 43
 
 *365
 
 Ill., 447, 92 Am. Dec., 146;
 
 Cobb
 
 v.
 
 Davenport,
 
 32 N. J. Law, 369;
 
 Tripp
 
 v.
 
 Richter,
 
 158 App. Div., 136, 142 N. Y. S., 563; 11 Ruling Case Law, 1032; 26 Corpus Juris, 598.
 

 With these two rules of law iu mind, the question presented narrows itself to the proposition whether the waters in which defendants claim the right of fishing are a part of Sandusky Bay, and hence subject to the right of public fishing. The Court of Appeals reached the conclusion:
 

 “That between the west line of said Huron township, extended, and the Black Channel, and the marsh adjacent thereto, there is a large triangular shaped body of open water about one-half mile wide from north to south, and about one-half mile from east to west. * *• * That the waters in said above-described triangular shaped body of water, and in said Black Channel and Plum brook, and in said marsh lands of plaintiff described in its petition, are the waters of Sandusky Bay and rise and fall therewith and vary in depth from time to time as the level of that bay and Lake Erie, of which it is a part, is affected by the wind or other causes.”
 

 We agree with the Court of Appeals in its conclusion that the triangular shaped body of water lying east of the west line of Huron township and the mouth of Black Channel, as described by the Court of Appeals, is a part of Sandusky Bay in so far as the rights of fishing are concerned, and is within the rule of
 
 Winous Point Shooting Club
 
 v.
 
 Slaughterbeck, supra, Bodi
 
 v.
 
 Winous Point Shooting Club, supra,
 
 and
 
 Sloan
 
 v.
 
 Biemiller, supra.
 
 We are not, however, able to reach the conclusion that the waters of Plum brook and Black Channel form
 
 *366
 
 a part of Sandusky Bay, but are of opinion that the law as to the open waters of Sandusky Bay should not have been applied to Plum brook and Black Channel, as the facts disclosed by this record require an application of law relative to water courses.
 

 A generally accepted definition of water courses is:
 

 “A
 
 stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must, be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water.”
 
 Hutchinson
 
 v.
 
 Watson Slough Ditch Co.,
 
 16 Idaho, 484, 101 P., 1059, 133 Am. St. Rep., 135;
 
 Luther
 
 v.
 
 Winnisimmet Co.,
 
 9 Cush., (63 Mass.), 171;
 
 Simmons
 
 v.
 
 Winters,
 
 21 Or., 35, 27 P., 7, 28 Am. St. Rep., 727.
 

 11A
 
 water course consists of bed, banks, and water. Yet the water need not flow continuously; there are many water courses which are sometimes dry. To maintain the right to a water course it must be made to appear that the water usually flows in a certain direction, and by a regular channel, with banks and sides.”
 
 Chamberlain
 
 v.
 
 Hemingway,
 
 63 Conn., 1, 27 A., 239, 22 L. R. A., 45, 38 Am. St. Rep., 330;
 
 Porter
 
 v.
 
 Armstrong,
 
 129 N. C., 101, 39 S. E., 799;
 
 Hill
 
 v.
 
 Cincinnati, W. & M. Ry. Co.,
 
 109 Ind., 511, 10 N. E., 410;
 
 Weis
 
 v.
 
 City of Madison,
 
 75 Ind., 241, 253, 39 Am. Rep., 135;
 
 Tampa Waterworks Co.
 
 v.
 
 Cline,
 
 37 Fla., 586, 20 So., 780, 33 L. R. A., 376, 53 Am. St. Rep., 262;
 
 Eulrich
 
 v.
 
 Richter,
 
 41 Wis., 318, 320;
 
 Eulrich
 
 v.
 
 Richter,
 
 37 Wis., 226, 229;
 
 Hinkle
 
 v.
 
 *367
 

 Avery,
 
 88 Iowa, 47, 55 N. W., 77, 45 Am. St. Rep., 224;
 
 Case
 
 v.
 
 Hoffman,
 
 84 Wis., 438, 445, 54 N. W., 793, 20 L. R. A., 40, 36 Am. St. Rep., 937;
 
 Shields
 
 v.
 
 Arndt,
 
 4 N. J. Eq., 234, 235;
 
 Jeffers
 
 v.
 
 Jeffers,
 
 107 N. Y., 650, 14 N. E., 316.
 

 The record discloses that Black Channel and Plnm brook have fixed channels and the waters thereof flow between recognized banks diagonally through plaintiff in error’s property. The journal entry of the Court of Appeals finds these streams to be “natural waterways,” and that:
 

 “Plum brook enters the land of the plaintiff near the southerly part thereof and runs in a northerly direction into Black Channel. Within the plaintiff’s land its length is about 3,000 feet, its width varying from 40 to 60 feet, and its depth from 1 to 6 feet.
 

 “That Black Channel, in so far as the same is included in the description named in the petition of plaintiff’s premises, is about 1% miles long and from 90 to 160 feet in width, and from a fraction of a foot to about 5 feet or more in depth, and extends northwesterly through the plaintiff’s property to the waters of Sandusky Bay.”
 

 Inasmuch as the characteristics of Black Channel and Plum brook as water courses are important, in addition to the findings of the Court of Appeals the following references to the record may be made:
 

 According to the testimony of the Engineers Judson and Henkelman, Black Channel flows from Long pond in the southeast part of the plaintiff’s property. “It begins at the roadway and runs northwest to the dredge cut of the Gr. A. Beckling Company.” The banks of Black Channel are from 1.1
 
 *368
 
 feet to 2 feet in height on its north side and from 1.6 feet to 2 feet on the south side.
 

 Plum brook rises in Perkins township, outside the land of plaintiff in error, draining considerable territory, and flows into Black Channel. Plum brook is 30 to 60 feet wide and has a depth of from .9 of a foot.to 2.6 feet. Its banks are from 1.2 feet to 1.6 feet in height. At a point 400 feet south of the south line of plaintiff in error’s property the depth of Plum brook is 2.5 feet; at a point 100 feet south it is .2 of a foot, and at the south line of plaintiff in error’s property it is 2.4 feet. At points about 200 feet apart to a point where it flows into Black Channel it is from 2.6 feet to 1.3 feet in depth.
 

 That Black Channel has long been recognized as a water course is shown by an examination of the record in the case of
 
 Teasel
 
 v.
 
 West Huron Sporting Club,
 
 70 Ohio St., 502, 72 N. E., 1165, decided in 1904, which case relates to the same property as involved herein, it appearing in Section 5 of the journal entry and finding of facts of that case that:
 

 ££ Plowing from near the easterly end or angle of the marsh and forming an outlet for the drainage of lands lying further east is a narrow channel, not clearly defined in its beginning, but becoming sharply defined further westward. This channel is referred to in the original surveys as £the creek flowing through the marsh, ’ but is now known as Black Channel. It has its course roughly parallel with the sand bar as it flows westward, till by a turn to the north it touches the bar and thence proceeds in a westerly direction and empties its waters into San-dusky Bay.”
 

 Again, the map in the case of
 
 Lockwood
 
 v.
 
 Wild-
 
 
 *369
 

 man,
 
 decided in 1844, appearing in the earlier editions of 13 Ohio, 430, shows a stream marked “Plum brook,” taking its course through the marsh.
 

 Having been found to be “natural waterways” by the Court of Appeals, and the record showing that the streams have current and channels well marked, we are of opinion that both streams come within the definition of water courses and neither loses its character as such because at times, when the wind is in the right direction, the waters of these streams may rise with the waters of Sandusky Bay and recede with the change of wind.
 

 A stream does not become less a water course because at times its banks fill and overflow from freshets, rainfall, flood, or back water. Neither does it lose its character as a water course by being dry at times, providing it flows ordinarily and permanently for substantial periods of time between recognized banks and in a fixed channel.
 

 The characteristics of the tides of the ocean are not to be attributed to water backed in at irregular and uncertain times, due to the change of the wind and an increase in its velocity sufficient to cause such a result. The alternate rising and falling of the waters of the ocean, and of bays, rivers, etc., connected therewith, caused by the attraction of the sun and the moon, is of regular occurrence, twice each 24 hours, and is necessarily a part of the volume of rivers and streams that empty into the sea. The times of flowing and receding, and the volume of water, are fixed and regular in the one case, and in the other are only of occasional occurrence and of uncertain extent as to amount and volume. The rule of tide waters does not, in our opinion, apply to
 
 *370
 

 water courses
 
 emptying into Lake Erie and the bays thereof, although outside and beyond such water courses, where the same merge in the waters of Lake Erie, or its bays, “the right of fishing in the waters is as open to the public as if they were subject to the ebb and flow of the tide. ”
 
 Sloan
 
 v.
 
 Biemiller, supra.
 

 Much is said in the briefs of counsel 'with reference to the navigability of the waters of Black Channel and Plum brook. This court has heretofore defined “navigable waters,” and in
 
 Hickok
 
 v. Hine, 23 Ohio St., 523, 527, (13 Am. Rep., 255), it is said:
 

 “A river is regarded as navigable which is capable of floating to market the products of the country through which it passes, or upon which commerce may be conducted; and, from the fact of its being so navigable, it becomes in law a public river or highway. The character of a river, as such highway, is not so much determined by the frequency of its use for that purpose as it is by its capacity of being used by the public for purposes of transportation and commerce.”
 

 In
 
 Chisholm
 
 v.
 
 Caines
 
 (C. C.), 67 F., 285, we find the following language:
 

 “In determining whether streams and arms of the sea traversing marsh lands are public, navigable waters, the test is whether they are, or are capable of becoming, public highways; that is, a means, open to the public, of passing from one place, where they have a right to be, to another, in which they have the same right. In other words, there must be a public terminus at each end, and hence partially navigable creeks which open upon a bay, but lead merely into private lands, are not public, navigable water.”
 

 
 *371
 
 The same principle is recognized in
 
 Schulte
 
 v.
 
 Warren,
 
 218 Ill., 108, 119, 75 N. E., 783, 785, (13 L. R. A., N. S., 745):
 

 “A
 
 stream is navigable in fact only where it affords a channel for useful commerce and of practical utility to the public as such. The fact that there is water enough in places for rowboats or small launches answering practically the same purpose, or that hunters and fishermen pass over the water with boats ordinarily used for that purpose, does not render the waters navigable.”
 

 While some claim is made that at earlier times these waters were commercially navigable, we are satisfied that no such condition exists at present as to Black Channel and Plum brook. Defendants in error offered testimony tending to show that fishing boats 35 and more years ago traversed Black Channel and took fish from the vicinity of Ned’s pond, and that upon another occasion sand was transported from Black Channel to the city of Sandusky. Other witnesses testify that in 1896,1905, and other dates, they took fish from Black Channel. We are unable, however, to find that these waters are navigable in a legal sense, under the conditions now existing. The navigability of waters of this character was under consideration before Taft and Lurton, Circuit Judges, and Severance, District Judge, in
 
 Toledo Liberal Shooting Co.
 
 v.
 
 Erie Shooting Club
 
 (C. C. A.), 90 F., 680. In the opinion, delivered by Lurton, J., much is said that is applicable to the conditions shown by the record in the instant case:
 

 “That the water stands permanently, and that it has a deep opening into Lake Erie, does not establish that this shallow body of water is capable of sus
 
 *372
 
 taming commerce, or is burdened witli a public use. It is nothing more or less than a marsh opening into the lake. To be navigable in law, it must be navigable in fact; that is, capable of being used by the public as a highway for the transportation of commerce.
 

 “None of the characteristics of commercial navigability are shown here. It is the natural feeding ground of the duck and other water fowl. In their pursuit by canoe and flat-bottomed ducking boats the water may be navigated. That is not commerce, and proves nothing. The same test would convert every pond and swamp capable of floating a boat into a navigable stream or lake. This bay is not a highway, never has been, and can never be. At the common law the term ‘navigable’ had a technical meaning, and was applied to all streams or bodies of water in which "the tide ebbed and flowed. All such waters were public. That definition is not applicable in this country, and all waters are held navigable in law, and subject to a public use, which are by their character capable of use as highways, for purposes useful to trade or agriculture. It is the capability of being navigated for. useful purposes which is the test. ’ ’
 

 We deem the above-cited case to be so applicable to the facts and conditions shown by this record as to justify our adoption of the above rule upon the point of the navigability of the waters of Black Channel and Plum brook, described in the plaintiff’s petition.
 
 1
 

 In
 
 Bodi
 
 v.
 
 Winous Point Shooting Club, supra,
 
 this court held that the Circuit Court erred in holding that the navigable waters in* dispute in that case
 
 *373
 
 formed a part, of Sandusky river and Mud creek instead of a part of a.public bay, and modified tbe judgment accordingly. Upon the same principle we find that in the instant case the Court of Appeals should have found, that Black Channel and Plum brook were water courses running through the property of plaintiff in error, rather than that the same were parts of Sandusky Bay. Hence to that extent we are required to modify the decree of the Court of Appeals.
 

 The validity of the title of plaintiff in error to the property described in the petition up to the west line. of Huron township is conceded. "While the ownership of this property up to the west line of Huron township is recognized in both
 
 Teasel
 
 v.
 
 West Huron Sporting Club
 
 and
 
 Stroud
 
 v.
 
 West Huron Sporting Club, supra,
 
 neither of said cases denies the right of fishing or navigation in the waters of the bay lying east of such line. This right of private ownership in land covered by the waters of a navi.gable lándlocked bay or harbor, connected with Lake Erie, subject to the public rights of navigation and fishery, provided the owner derives his title from express grant made or sanctioned by the United States, is recognized in
 
 Hogg
 
 v. Beerman, 41 Ohio St., 81, 52 Am. Rep., 71, so that, if it be conceded that the plaintiff in error is the owner of the land under the water of Sandusky Bay up to the west line of Huron township, under this rule announced in the
 
 Beerman case
 
 the rights of the public and the defendants in error of fishing are preserved, in so far as such waters form a part of Sandusky Bay. This distinction between the rights of fishing in the waters of the open bay and in waters which flow into
 
 *374
 
 said bay over the land of private owners is recognized in the case of
 
 Winous Point Shooting Club
 
 v.
 
 Slaughterbeck, supra,
 
 wherein Johnson, J., in discussing the case of
 
 Bodi
 
 v.
 
 Shooting Club, supra,
 
 says:
 

 “We think it is clear from a reading of the record in that case that the insertion of the word ‘navigable’ in the entry of this court was made so as to prevent the implication that the defendants were held to be entitled to fish on the premises of the plaintiff in portions of the Sandusky river outside of the open public bay, or in the creeks and ponds on the territory of the club adjoining the bay. But it is clear that the specific thing that the court decided, and which is the important point in this case, is that the navigable waters in dispute form part of' a public bay and not part of Sandusky river and Mud creek, and that the circuit court erred in holding otherwise upon the facts found in that court.”
 

 Our conclusion, therefore, is that the decree of the Court of Appeals, in so far as it recognizes the rights of navigation and fishing in said triangular shaped body of water, should be
 
 affirmed;
 
 but, being of opinion that the law of nonnavigable water courses whose bed and banks have a common owner should have been applied to Plum brook and Black Channel, so much of the decree of the Court of Appeals as pertains to such water courses is reversed, and the defendants, and those claiming with them, should have been enjoined from trespassing upon the premises of plaintiff or fishing in the waters of Black Channel and Plum brook eastward from the mouth of said Black Channel, which point is determined to be the western shore of the island formed by
 
 *375
 
 the waters of said Black Channel and the dredged canal at the point where the same enters Sandusky Bay. In all other respects the judgment of the Court of Appeals is affirmed.
 

 Judgment modified and affirmed.
 

 Marshall, C.
 
 J.,
 
 Allen, Kinkade, Robinson and Matthias, JJ., concur.