Weygandt, C. J.
As observed by the lower courts, the ultimate question in this controversy is whether *203 Beaver Creek River, or Beaver Creek, is a navigable stream where the defendants have constructed the wire fence and steel cables.
Most of the controlling facts are not in dispute.
The stream involved meanders through several townships and flows northward into Lake Erie. The defendants are a father and son who own the land on opposite sides of the mouth of the stream and extending up stream from the lake a distance of approximately a half mile. The plaintiffs own land on opposite sides of the stream immediately above that owned by the defendants. For some years all the parties have operated substantial commercial enterprises consisting of boat rentals, boat dockage, boat storage, boat repairs, cottage rentals, sale of fishing tackle and related services to the public. The defendants have constructed the fence and steel cables across the stream near the south boundary of their land and north of that of the plaintiffs, thus rendering it impossible for the plaintiffs to use the lower part of the stream and destroying their necessary ingress and egress from and to the concededly navigable lake.
In determining whether this stream is navigable it is necessary to note the gradually changing concept of navigability.
Under the old common law, the test was whether the stream was within the ebb and flow of the tide. However, in a country, such as the United States, abounding in large fresh water rivers and lakes, this test generally has been held inadequate. In Article IV of the famous Ordinance of 1787 providing an organic government for the territory of the United States northwest of the Ohio River, appears the following:
“The navigable waters leading into the Mississippi and Saint Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of said territory as to the *204 citizens of the United States, and those of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor.”
And on February 10, 1932, the Congress of the United States amended Section 3 of the Rivers and Harbors Act by adding the following sentence:
“As used in this section the term ‘commerce’ shall include the use of waterways by seasonal passenger craft, yachts, house boats, fishing boats, motor boats, and other similar water craft, whether or not operated ^for hire.”
And in the second paragraph of the syllabus in the case of Hickok v. Hine, 23 Ohio St., 523, 13 Am. Rep., 255, this court held:
“2. A river is regarded as navigable which is capable of transporting the products of the country, or upon which commerce may be conducted; and its character as a highway is determined by its navigable capacity rather than by the frequency of its use for navigation. ’ ’
As did the lower courts, the defendants rely on the decision of this court in the later case of East Bay Sporting Club v. Miller, 118 Ohio St., 360, 161 N. E., 12, in which the second paragraph of the syllabus reads as follows:
“2. "Waters are navigable in law when they are used or are susceptible of being used in their ordinary condition as highways for commerce over which trade and travel are or may be conducted in the customary-modes of trade and travel upon water.”
However, in the opinion in that case it is said that “the question presented narrows itself to the proposition whether the waters in which defendants claim the right of fishing are a part of Sandusky Bay.” The defendants were individual nonowners who claimed the right to fish on the plaintiff’s private marsh lands through which ran two shallow streams having a vary *205 ing depth of'but two tenths of a foot in some places— hardly navigable water. It was not a controversy between riparian owners, as in the instant case.
In a discussion of the change in the concept of navigability, the following summary appears in 56 American Jurisprudence, 648, Section 181:
“There is, however, much authority for the view, which has been spoken of as being the better rule, that it is not necessary that the water be capable of commerce of pecuniary value, and that boating or sailing for pleasure should be considered navigation as well as boating for mere pecuniary profit. And the expression is frequently used that navigability for pleasure is as sacred in the eye of the law as navigability for any other purpose. It has been held that the term ‘navigable,’ as used in a statute relating to the ownership of submerged land, includes waters which are naturally available for use by the public for boating, fishing, etc., although they may not be susceptible of use for general commercial navigation. ’ ’
In the case of United States v. Appalachian Electric Power Co., 311 U. S., 377, 85 L. Ed., 243, 61 S. Ct., 291, it was held that lack of commercial traffic is not a bar to a conclusion that the stream is navigable, where personal or private use by boats demonstrates the availability of the stream for the simpler types of commercial navigation; that the navigability of a stream is to be determined on the basis, not only of its natural condition, but also of its possible availability for navigation after the making of reasonable improvements ; and that it is not necessary that such improvements be actually completed or even authorized.
In the case of Lamprey v. State, 52 Minn., 181, 53 N. W., 1139, 38 Am. St. Rep., 541, 18 L. R. A., 670, the court said:
“The division of waters into navigable and non- *206 navigable is merely a method of dividing them into public and private, which is the more natural classification ; and the definition or test of navigability to be applied to our inland lakes must be sufficiently broad and liberal to include all the public uses, including boating for pleasure, for which such waters are adapted. So long as they continue capable of being put to any beneficial public use, they are public waters.”
And in the case of State v. Twiford, 136 N. C., 603, 48 S. E., 586, it was held:
“It is the navigability of the water that is the test, its accessibility by water and not accessibility by land —else whether bays, estuaries, creeks and rivers are publici juris would depend upon whether or not riparian owners have monopolized the ownership of the adjacent soil. ”
In a few states it has been held that even streams which are merely floatable and useful for logging purposes may be considered to be navigable.
In view of this trend of the law, is the stream in the instant case navigable at the location involved in the controversy?
According to the evidence the stream is approximately 120 feet wide at its mouth, and for a distance of about two miles the width averages from 80 to 90 feet. The depth, in contrast to that in the Miller case, supra, varies from six to 11 feet. These figures would seem to indicate navigability especially for the small pleasure craft rented by the parties to their customers. However, the defendants insist that a number of circumstances interfere. The stream is crossed by two bridges — one with a clearance of but 5% feet. At times the stream becomes partially clogged with dense vegetation, brush and other debris. On several occasions the defendants have employed a dredge to clear the channel at and near the mouth of the stream.
But in spite of these difficulties the plaintiff Sisco *207 has operated his boat rental business for 14 years until stopped by the cables and fence constructed across the stream by the defendants.
Hence, this court is of the opinion that Beaver Creek is a navigable stream at the location in question. The judgment of the Court of Appeals is reversed, and final judgment is rendered for the plaintiffs.

Judgment reversed.

Matthias, Zimmerman, Bell and Tart, JJ., concur. Hart and Stewart, JJ., dissent.