Statement of Facts.

## REBECCA LORD v. MEADVILLE WATER CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY.

Argued April 29, 1890—Decided May 19, 1890.

[To be reported.]

1. The owner of land upon which a spring issues, creating a stream which flows in a natural channel into and through the lands of others, has no right, by virtue of his ownership of its site, to divert the waters of the spring to another channel; his rights are those of a riparian owner; neither more, nor less.

2. The fact that such owner is a corporation organized for the purpose of supplying water to the public, under the provisions of the act of April 29, 1874, P. L. 73, does not affect the extent of the rights acquired by purchasing the land; and those rights do not justify the diversion of such water into its lines for the supply of its customers.

3. The fact that such corporation is invested with the right of eminent domain will not authorize such diversion, unless that right has been exercised according to law; and, by diverting the water, without first paying or securing compensation to lower riparian owners deprived of its use, the corporation thereby becomes a trespasser.

4. The failure of a married woman, suing for an alleged injury to land, to show a paper title or even possession distinct from her husband, is unimportant, when the husband has testified without objection that the land belonged to her, as such testimony will estop him, if the real owner, from recovering for the same cause of action.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 63 January Term 1890, Sup. Ct.; court below, No. 32 November Term 1888, C. P.

On October 1, 1888, Rebecca Lord brought trespass against the Meadville Water Company, to recover damages for the alleged obstruction and diversion, by the defendant, of a stream of water which had been accustomed to and of right should flow through a certain tract of land belonging to the plaintiff. The defendant's plea was not guilty.

At the trial on September 25, 1889, the following facts were shown: In February, 1888, the defendant water company, in-

Charge of Court below.

corporated under the act of April 29, 1874, P. L. 73, purchased
from William Schnauber an acre of ground in Mead township,
Crawford county, part of a tract of land formerly owned by
George Lord. Upon the acre so purchased was a very strong
spring of water, known as "Lord's Spring." The purchase
was made subject to a reservation to the grantor of sufficient
water from the spring for a certain watering trough. In June,
1888, the defendant laid a pipe connecting the spring with the
mains by which it supplied water to the inhabitants of the city
of Meadville and vicinity. The testimony for the plaintiff
was to the effect that for at least sixty years a stream of water
from that spring had been accustomed to flow, in a natural
channel, upon and through the tract of land alleged to belong
to the plaintiff, and to irrigate four or five acres thereof; that
in the months of June, July, August and September, 1888, in
consequence of the diversion of the water into the defendant's
pipes, and the resulting loss of the use of the water for pur-
poses of irrigation and watering stock, the plaintiff suffered a
loss of more than $40. The plaintiff did not put in evidence
any paper title, but several witnesses, among whom was her
husband, Richard Lord, testified on her behalf, without objec-
tion, that the farm was owned by her and that both she and
her husband resided upon it. Testimony was adduced by the
defendant to rebut the allegations of the plaintiff respecting
the damages suffered.

After the testimony was closed and points had been pre-
sented to the court and argued, the plaintiff offered to show
title in herself to the land in question, by putting in evidence
a deed, and by the testimony of a single witness.

Objected to by the defendant because of the fact that the
case was closed on the testimony.

By the court: The ownership was proved by parol.

The court, HENDERSON, P. J., charged the jury in part as
follows:

It was conceded, on the trial of the case, that the defendant
company is a corporation, organized under the act of April 29,
1874, P. L. 73, for the purpose of supplying the city of Mead-
ville and vicinity with water for domestic and other purposes.

[If you should find, gentlemen, from the evidence, that there

Charge of Court below.

has been for sixty years or more, a stream of water flowing from the spring on the George Lord farm, across the state road, on to the farm of the plaintiff, through and along a well-defined water-course, or channel, the plaintiff in this case has a right to the continued enjoyment of that stream. The use of the water which flows along land in a natural water-course, a natural flow of water, is appurtenant to the land over which it flows, and the owner of the land has a right to the use of that water for the usual and ordinary purposes of agriculture and domestic life. He has no right to divert the stream to the prejudice of an owner further down the stream, without that owner's consent. The law holds that the water may be used by the person over whose land it flows, but that it is in a sense a flowing good, as it passes from the land of one person to that of another; and, inasmuch as it is the order of Divine Providence that it move from place to place, and is necessary to existence and the comfortable enjoyment of life, its use shall not be interfered with or obstructed further than is necessary for the ordinary purposes to which the water may be applied by the owner of the land over which it flows. The flowing of this stream from the south side of the state road, over on to the north side, and through this field naturally, for a long time, by consent of the owner of the spring from which the stream flows, gives the owner of the land on the north side the right to a continuous use of the stream for the customary purposes of agriculture; and, if the owner of the spring on the opposite side, or any person claiming under him, divert the stream from its natural channel, leading it off from the land and appropriating it for other purposes than those of agriculture, for which it had been theretofore used, the person so diverting it subjects himself to an action for damages, such as the person injured may have sustained.] [6]

[In the present case, the defendant stands in the position, legally, that the owner of the spring and the farm on the south side of the state road would have occupied before the sale to the defendant company. The owner of that spring would not have been allowed, legally, to take the water from the spring and lead it off into another channel, and in another direction, so as to prevent it from flowing along the channel in which it theretofore flowed. The defendant company claims by deed

Charge of Court below.

from the former owner of the land in which and out of which the spring flows, and has offered in evidence the title showing that the company has bought from the owner of the spring the use of the spring. That puts the defendant company in the position of the owner of the spring, prior to granting of that deed. They get no more rights than the grantor under the deed had prior to the execution of it; and, inasmuch as the owner of the land and spring, prior to the making of this deed, would have no right to divert the stream from the land of the plaintiff, the company claiming under him has no other or greater right.] [7]

The defendant alleges that inasmuch as it is a corporation under the provisions of the act of 1874, it has the right, commonly known as the right of eminent domain, to appropriate water and other material for its uses. The right can only be exercised, however, if it exist at all, in accordance with the forty-first section of the act of 1874, which provides . . . . . It is not contended that the defendant followed the provisions of the act of 1874, in acquiring any right to the property which the plaintiff had. In this particular case, so far as appeared at the trial, no bond was tendered to Mrs. Lord, and no effort made to acquire the right she had, or to compensate her, or secure her any damages which might be sustained by reason of the diversion of the stream. The defendant has not complied with the provisions of the act and has acquired no rights to the appropriation of private property for corporate uses under that act. It is a constitutional provision in this state that private property shall not be taken for public use, without compensation; and, until that compensation has been made, or until provision has been made for securing its payment, as provided by law, no right of acquisition of private property exists. You are therefore, to consider, gentlemen of the jury, these propositions: Has there been a stream flowing on to the land of Mrs. Lord for many years, this spring run claimed by the plaintiff; has it been so flowing in its usual and natural channel; and has that stream been diverted by the defendant company?

If you find these propositions in the affirmative, then, what is the damage the plaintiff has sustained by reason of that fact?

[The plaintiff contends that, in addition to the actual damage sustained by reason of the loss of this water, and the use

Charge of Court below.

of it during the summer of 1888, exemplary damages should be granted by you, for the reason that the defendant company went on in violation of the rights of the plaintiff, without regard to her rights, and took the stream away. If the defendant, with a knowledge of the rights of the plaintiff to have the use of this water, went on and deprived her of the use of it, took it away from her, and that was done in such a manner as to indicate to you that it was taken regardless of her rights, you are allowed by law to give exemplary damages to the plaintiff. That should only be done, however, gentlemen, when you are satisfied that the defendant has acted in such wilful disregard of the plaintiff's rights as would lead you to believe that the company ought to be made to suffer more than the actual loss sustained by the plaintiff.] [8]

The plaintiff asks us to instruct the jury on certain propositions of law:

1. That if from the evidence they find that a stream of water has been accustomed to flow from the "Lord Spring" across plaintiff's farm for a period of 30 years and upwards, and that defendant company diverted said stream of water from plaintiff's farm from about June 1, 1888, until October 1, 1888, then plaintiff is entitled to recover damages therefor to the amount of the difference in the value of the use of said farm during that period, with the water in the stream, and the value without the water.

Answer: Affirmed.[1]

2. That if they find from the evidence that defendant company diverted said stream without right or authority, and in disregard of the rights of plaintiff, they may go beyond the actual damages mentioned in the first point, and give such reasonable punitive damages as they may think right under the facts in this case.

Answer: Affirmed.[2]

The defendant asks us to instruct you as follows:

1. Any right to recover damages in this case, under the pleadings, depends upon the title of the plaintiff to the premises alleged to be damaged, or at least to the possession thereof: and the plaintiff here having shown no title to the locus in quo, and her husband being admittedly in possession thereof, the plaintiff here cannot recover on any title nor possession, and the verdict must be for the defendant.

Charge of Court below.

Answer: Under the evidence in this case this point is denied.[3]

2. The corporation act of 1874 has provided a full and complete remedy for the taking of land, water and other materials for corporate purposes and uses. This remedy is special and therefore exclusive, and must be pursued by any person who pretends to have suffered loss or damage by reason of the taking of such land, water or material, and this action not being such remedy, the plaintiff is not entitled to recover here, and the verdict must be for the defendant.

Answer: We have already instructed you, gentlemen, that the rights acquired from the plaintiff, if any were acquired by the defendant company, were not to appropriate in pursuance of the provisions of the act of April 29, 1874. This point is therefore denied.

3. The owner of the Lord spring had a right to sell, and the defendant corporation had a right to buy the water in and flowing into said spring; and, if the defendant bought from the owner of said spring certain of its water for its corporate purposes, the taking and use of such water is not a wrong done to the owner of the lands on which any waste water from such spring had been wont to flow; and, under the evidence in this case, this plaintiff is not entitled to recover, and the verdict must be for the defendant.

Answer: Denied.[4]

4. By the deed of February 2, 1888, from William Schnauber and wife, the defendant corporation became the owner of the Lord spring, and thenceforth have a right to the use of the water therefrom for all lawful and necessary purposes under its chartered privileges; and, if in consequence of such use the plaintiff, as inferior owner, is deprived of the flow of water over her own land, under the plaintiff's own evidence in this case it is an evil without a remedy, and plaintiff cannot recover.

Answer: Denied.[5]

The jury returned a verdict in favor of the plaintiff for $41. Judgment having been entered thereon, the defendant took this appeal assigning for error:

1, 2. The answers to plaintiff's points.[1] [2]

Arguments.

3–5. The answers to defendant's points.[3 to 5]

6–8. The parts of the charge embraced in [ ] [6 to 8]

*Mr. Pearson Church*, for the appellant:

1. If the defendant company took water by virtue of the right of eminent domain, it can be called on to answer only to the owner of the premises: § 41, act of April 29, 1874, P. L. 104; and the person alleged to be aggrieved must show title in fee, or a tenancy for life or for years: Church v. Railway, 45 Pa. 339; Winebiddle v. Railroad Co., 2 Gr. 33. The plaintiff is a married woman living with her husband on the premises from which the water is alleged to have been diverted. Until she shows that the property was acquired by her otherwise than through means derived from her husband, the law presumes that it belongs to him, and the burden is on her to prove that she so acquired it: Pier v. Siegel, 107 Pa. 507; Gamber v. Gamber, 18 Pa. 363; Rhoads v. Gordon, 38 Pa. 277; Tripner v. Abrahams, 47 Pa. 220; Baringer v. Stiver, 49 Pa. 129; Sixbee v. Bowen, 91 Pa. 149. A defendant has a right to be made certain that the person by whom he is sued is the proper person to sue, and that a recovery will be a bar to an action by any other person for the same cause. In the present case, even the plaintiff's possession is not distinct from that of her husband. She should have been required to prove title, and the defendant's first point should have been affirmed.

2. The purchase of the ground upon which the spring was situated, and the using of the spring for the supply of water to the public, were in fulfilment of the defendant's corporate duty under the act of April 29, 1874, P. L. 104. Damages resulting from the lawful use of its works by a corporation, in the absence of malice or negligence, are damnum absque injuria: Delaware etc. Canal Co. v. Goldstein, 125 Pa. 246; Penna. R. Co. v. Marchant, 119 Pa. 542; Penna. R. Co. v. Lippincott, 116 Pa. 472. An unavoidable loss occurring to another from the natural and rightful use of one's own land, is governed by the same rule: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Fletcher v. Rylands, 3 H. L. Cas. 330. A superior owner may increase the flow of water upon his inferior: Kauffman v. Griesemer, 26 Pa. 414. Why may he not, by using it, decrease such flow? Private personal inconvenience must yield to the

Arguments.

necessity of an industry subserving a great public interest: Penna. Coal Co. v. Sanderson, supra. The plaintiff claims the right to use the defendant's land as a filter for her own benefit. This has never been allowed: Wheatley v. Baugh, 25 Pa. 528; Haldeman v. Bruckhart, 45 Pa. 514; Lybe's App., 106 Pa. 626; Collins v. Gas Co., 131 Pa. 143. There was no evidence justifying the instruction specified in the eighth assignment.

*Mr. George F. Davenport*, for the appellee:

1. The rule that when husband and wife are in joint possession of land, the law presumes the property to belong to the husband, applies only in case of a contest between the wife and the husband's creditors. In this case, the plaintiff showed title to and possession of the land; it was neither alleged nor claimed that any one else owned or was in possession of it, and the husband's testimony in support of his wife's claim would estop him from making any claim against the defendant. Moreover, there is no pretence that the defendant took the water by right of eminent domain. As it gave to the plaintiff neither compensation nor security, its act was wrongful and trespass lies: Bethlehem etc. Water Co. v. Yoder, 112 Pa. 136. Moreover, under the act of April 29, 1874, P. L. 104, it could not appropriate property outside the city of Meadville.

2. The purchase of the land on which the spring is situated, did not give the right to conduct the water away and sell it. The only right to the water thus acquired was that of a riparian owner. Running water is no part of the soil, nor the produce of the soil: 2 Bl. Com., 18; Race v. Ward, 82 E. C. L. 702. The owner of land, on which is a spring, has no right to divert the stream flowing therefrom, to the injury of owners of land below: Arnold v. Foot, 12 Wend. 330; Gillet v. Johnson, 30 Conn. 180; Wadsworth v. Tillotson, 15 Conn. 366 (39 Am. Dec. 391); Race v. Ward, supra; Penna. R. Co. v. Miller, 112 Pa. 34. An examination of the testimony will show that exemplary damages did not enter into the verdict. The instruction on that subject, however, was correct, the defendant having cut off the plaintiff's entire supply of water, without pretence of right, in a district where it had no right of eminent domain: Penna. R. Co. v. Eby, 107 Pa. 166.

Opinion of the Court.

OPINION, MR. CHIEF JUSTICE PAXSON:

We need not discuss the question presented by the second assignment, for the reason that an examination of the testimony shows conclusively that the jury did not give punitive damages. The verdict, $41, is within the range of the undisputed testimony. The remaining assignments refer to the charge of the court and the answers to points. It is not essential to consider them separately. We can better dispose of them by giving our views generally upon the law of the case.

This was an action of trespass, brought by Mrs. Lord, a married woman, against the Meadville Water Company, to recover damages for the diversion of a stream of water which, before the injury complained of, flowed over her land. The Meadville Water Company, appellant, was incorporated under the act of 1874, and, it was alleged, had the right of eminent domain for the purpose of supplying the city of Meadville with water. In order to aid in procuring such supply, the company, in the year 1888, purchased an acre of land near said city, on which was a flowing spring of water, and carried the water from said spring to the city by means of pipes. The plaintiff owns land near this spring, over which the water thereof was accustomed to flow prior to its diversion by the company. She claims that it no longer flows there, and that, by reason of its being diverted out of its natural channel, she is deprived of its use for irrigation and other purposes. This suit was brought to recover damages for such injury.

The questions thus presented are not difficult of solution. By the purchase of this acre of land on which the spring is situate, the company acquired the rights of a riparian owner; neither more, nor less. What its rights as riparian owner are, were sufficiently defined in the recent case of Haupt's App., 125 Pa. 211, where it was said: "If the authority of the plaintiff were measured by its rights as riparian owner, it would be slender enough. It might indeed use the water for the domestic purposes incident to the said ten acres of land. If there was a tenant thereon, he could use it for watering his stock, and for household purposes; for any useful, necessary, and proper purpose incident to the land itself, and essential to its enjoyment. But that the rights of a riparian owner would justify the plaintiff in carrying the water for miles out of its

channel, to supply the borough of Ashland with water, is a proposition so palpably erroneous that it would be a waste of time to discuss it." So we say here. The purchase of the acre of land, including the spring, gave the company the rights of a riparian owner. But such rights were not a justification for the diversion of the water from its natural channel to supply the city of Meadville.

It was conceded upon the argument that the company had the right to divert it under its power of eminent domain. But it has never exercised such right. To do so involves compensation to those who are or may be injured by such diversion. Compensation was not made, nor security tendered. While a city or borough, or a company having the right of eminent domain, may take a spring or stream of water to supply a municipality, it can only do so by making compensation to those who are deprived of the use of the water, as provided by the constitution. A taking without compensation is a trespass; as much so as the taking of land by a railroad company to construct its road without making compensation or filing a bond with security, as provided by law. Where the power to take exists, it must be exercised according to law. If it is not, the corporation so taking becomes a trespasser, and may be proceeded against as such. It is a mistake to assume that the purchase of this acre of land gave the company an absolute right to the spring of water. The water did not pass by the deed beyond its reasonable use by the vendee as a riparian owner. As was said in Haupt's Appeal, supra: " There can be no such thing as ownership in flowing water; the riparian owner may use it as it flows; he may dip it up, and become the owner by confining it in barrels or tanks, but, so long as it flows, it is as free to all as the light and the air." The company might have taken this spring under its right of eminent domain, if it possessed such right; for aught that appears, it may do so still, and, after having done so and made compensation to the riparian owners who are injured thereby, it will be free from suits of this nature. Had it done so in this instance, it would not have had this judgment against it.

We do not regard the question of the plaintiff's title, under the facts of the case, as of any importance. The plaintiff's

Statement of Facts.

husband testified that the farm belonged to her, and he is certainly estopped from recovering damages in another suit.

Judgment affirmed.

