CONOBRE ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* FRITSCH ET AL., APPELLEES AND CROSS-APPELLANTS.

(No. 4287—Decided June 11, 1952.)

*Mr. John R. Quine,* for appellants and cross-appellees.

*Mr. Merryl F. Sicherman,* for appellees and cross-appellants.

HUNSICKER, P. J. Appellants, George Conobre and Mary Conobre, herein called Conobre, own a tract of land bordering the south side of the Cuyahoga Falls-Mogadore road, a public highway in the city of Tallmadge, Summit county, Ohio. Eugene Fritsch and Tamar Fritsch, appellees and cross-appellants, herein called Fritsch, own a tract of land bordering the north side of the same public highway, directly across such highway from a portion of the Conobre land.

Beginning in the eastern portion of the Fritsch land is a stream of water which arises out of a tile buried in the ground about two feet below the surface. There is no indication as to the exact source of this water. In the testimony before this court it is most frequently called a spring.

This court, at the request of and by agreement of the parties, when accompanied by counsel and the parties herein, made an extensive view and examination of the premises in order to examine the location, terrain and general topography of these lands, the spring, and the stream of water which flows from such spring.

The stream of water first comes into visual existence on high ground in the eastern part of the Fritsch farm, and flows to lower ground across Fritsch's land, principally through a 24-inch tile pipe, to a culvert. The water then flows under the culvert, which crosses the Cuyahoga Falls-Mogadore road to the south side of such road, where, by means of similar pipe, the water is conducted part way across the land of Conobre. For many years this flow of water caused the land now owned by Conobre to be swampy.

522

Conobre purchased a part of his land in 1944, and the remainder in 1949. Fritsch purchased his land in 1950.

The stream of water in question herein has flowed in the general direction in which it now runs for a longer time than any of the witnesses can remember. Some of these witnesses, former owners of these lands, remember the flow of water substantially as it now exists since the year 1901. How many years prior to 1901 this same condition existed is not known.

The Cuyahoga Falls-Mogadore road was relocated about 1925 or 1926, the culvert under the road was widened, and the flow of water changed to run along the south side of the road in a northerly direction into Kelsey ditch. This diversion of flow caused the land now owned by Conobre to become less swampy, and hence useful for pasture.

Conobre, being desirous of using this water to construct a public commercial swimming pool, opened his south bank at the point where the culvert crossed the road, thereby permitting the water to flow into this swimming pool through a similar 24-inch tile pipe. This pool is located about where the swamp previously existed.

After Conobre constructed his pool, Fritsch, upon whose land there was a small cattle pond, determined to build a larger pond. He removed some of the tile, constructed a dam, and stopped the flow of water. This resulted in a lowering of the level of the water in the Conobre swimming pool to a point where it could not be used. Fritsch also constructed an outlet in his pool that required cleaning, which, when it was removed for such purpose, caused the water in the Conobre pool to become muddy.

Conobre brought an action to enjoin Fritsch from obstructing, diverting or diminishing the flow of water to his swimming pool, claiming that the stream is a

natural watercourse. Fritsch filed an answer in which he denied that the stream is a natural watercourse. By way of cross-petition Fritsch claimed the right to the exclusive use of the water in such stream, and prayed for a judgment declaring his right to the exclusive use of such water.

The Common Pleas Court, after a trial of the issues, rendered a judgment, which in its pertinent part is as follows:

"This cause came on to be heard upon the pleadings and evidence; upon consideration whereof the court finds that the issues between and among the parties have become moot.

"It is accordingly by the court ordered that the petition of the plaintiffs George Conobre and Mary Conobre, the intervening petition of the plaintiff the city of Tallmadge, and the cross-petition of the defendants, Eugene Fritsch and Tamara Fritsch, be, and they are hereby, dismissed, and that the temporary restraining order hereinbefore granted be, and the same hereby is, dissolved."

An appeal by Conobre and a cross-appeal by Fritsch from such judgment are before this court, each on questions of law and fact.

Conobre and Fritsch, through their respective counsel, say to this court that Fritsch desires to and will, unless restrained, use all of the water from this stream to the exclusion of Conobre.

We have but one question under the facts of this case, which may be stated as follows: Is the stream which flows over the land of Fritsch, through the culvert and onto the land of Conobre, a natural watercourse?

It should be repeated at the outset of our discussion that the actual source of the water in this stream has never been fully determined. The visible source is in the extreme eastern part of the Fritsch property,

where a tile pipe is located beneath the surface of the ground. This spot is near an abandoned coal mine. One witness stated that a portion of the water also came into the stream from this coal mine. The evidence does not show what part or how much of this coal mine is located on the Fritsch lands. The flow of water is in large part conducted through the tile pipe, although a part also flows in a small channel.

Conobre insists that this is a natural watercourse, which, if permitted to flow in its usual course, would cross over his lands into Kelsey ditch. Fritsch insists that the stream is formed by a spring arising solely on his lands; and that, except for its tile pipe channel, it would flow northward at the western edge of his land, and hence into Kelsey ditch.

We are not dealing herein with the question of a subterranean stream, which is without any distinct, definite and known channel, and which oozes or bubbles out on the land of Conobre. See: *Frazier* v. *Brown,* 12 Ohio St., 294. Except for the tile in which it is encased, this water would flow openly. It is placed in tile pipe and covered with earth, in order that the land may be cultivated more efficiently.

The Supreme Court of Ohio in the case of *East Bay Sporting Club* v. *Miller,* 118 Ohio St., 360, 161 N. E., 12, defined a watercourse as "a stream usually flowing in a particular direction in a definite channel having a bed, banks or sides and discharging into some other stream or body of water." (Paragraph 3 of syllabus.)

If we admit, for the purposes of argument, that the water in this stream is a spring, which has its source on the lands of Fritsch, are we to assume from such fact that the right of Fritsch to the exclusive use of this water is thereby established?

It must be remembered that, within the memory of those best able to describe its flow, this stream has

been running, encased in the tile pipe, in the direction which it now traverses, for more than fifty years.

Can such a spring and its consequent overflow into a channel, even though for a great part of its distance it is encased in tile pipe, create a natural watercourse, with the attendant rights of riparian owners?

Although we find no comparable situation in the reported cases in Ohio, there are cases in other jurisdictions which answer the question for us, some of which we detail herein.

*Wadsworth* v. *Tillotson,* 15 Conn., 366. A case where the overflow of the waters of a natural spring on the lands of the owner, which overflow passed over the land of the owner of the spring to the adjoining lands of another, was considered to be a natural watercourse.

*Lord* v. *Meadville Water Co.*, 135 Pa., 122, 8 L. R. A., 202, 20 Am. St. Rep., 864, 19 A., 1007. A case where the defendant, a private corporation with power of eminent domain, purchased land on which was located a spring, and was held not to have, by such ownership, acquired the right to divert the water of such spring from its natural channel without making compensation therefor. The purchase of the land on which such spring was located gave the purchaser only the rights of a riparian owner.

*Town of Purcellville* v. *Potts,* 179 Va., 514, 19 S. E. (2d), 700, 141 A. L. R., 633. A situation similar to the case of *Lord* v. *Meadville, supra.* The court quoted with approval the following from *Roberts* v. *Martin,* 72 W. Va., 92, at p. 99, 77 S. E., 535: "Though the diversion of the water is made from a spring, yet it appears clearly that the spring is a source of the stream." One of the springs in question was situated on property owned by the town of Purcellville.

We have cited only a few of the cases with reference to this subject. A collation of cases dealing with

the problem herein may be found in 55 A. L. R., 1501, and 109 A. L. R., 416.

The rule established in the vast majority of the reported cases is that the owner of land, upon which is located a spring, from which spring there flows a stream of water, has only the rights of a riparian owner in the spring and stream, where such stream, if allowed to follow its natural course without obstruction, would flow in a definite channel onto and across the land of an adjoining owner. The spring in such case is a part of the stream, and, as such, they both constitute a natural watercourse.

An excellent analysis of the rights and obligations of owners of adjoining lands in respect to water passing from the lands of one owner to those of the other is found in the case of *Frazier* v. *Brown, supra.*

We therefore determine that the stream under discussion herein is a natural watercourse, and that the parties have only such rights as are given to riparian owners. An injunction may issue preventing Fritsch from diverting the water in such stream to his exclusive use.

A decree may be prepared by counsel in accord with the finding herein.

*Judgment accordingly.*

DOYLE and STEVENS, JJ., concur.