DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiffs-appellants Willard and Connie Beddow appeal from the judgment rendered in the Summit County Court of Common Pleas in favor of defendant-appellee Norton Fireman's Association, Inc. ("NFA"). We affirm in part and reverse in part.
The Beddows acquired title to their lot in 1982. The property lies in a flood plain. The eastern side of the Beddows' lot adjoins a lot owned by the NFA. The Beddows have their residence and their lawn and garden business on their lot. A tributary of Pancake Creek flows across the Beddows' lot. When it reaches the NFA property, which is downstream from the Beddows' property, the creek's waters flow into a 30 inch pipe. The 30 inch pipe traverses the NFA's lot, emptying its waters into a catch basin.
The Beddows experienced flooding and water problems as early as 1986 and continued to experience problems up to the time of trial. The parties agree that the pipe's inadequate size contributes to the Beddows' flooding problems. The Beddows allege that their plot is transformed into a lake four to five times a year, with the shop, showroom, greenhouses, and storage buildings all taking in water and sustaining damage.
The NFA took title to their property in October, 1987. Prior owners had installed the 30 inch pipe along the path of a creek bed which they filled in. Prior owners had also built a structure over the pipe which the NFA used for a bingo hall. In 1989, the NFA constructed a pole barn over the pipe, about 21 feet from the mouth of the pipe. Experiencing their own flooding problems, which included water flowing around the pole barn on both sides, the NFA constructed a rude set of wing walls and a head wall around the mouth of the pipe. There was conflicting testimony over whether, prior to building the pole barn, the NFA filled in a swale, or a depressed and wet stretch of land, that had developed atop the pipe along its length.
The City of Norton sent an engineer to the site in 1991, at the Beddows' request. The engineer recommended that a swale be cut over the NFA's property, at a cost of about $3,000. Bill Beddow testified that he and an officer of the NFA discussed the swale recommendation, but that the officer of the NFA refused to have the swale cut.
The Beddows filed a complaint on April 22, 1994, alleging that: 1) that the NFA "negligently and/or recklessly diverted, disrupted, and obstructed a watercourse which travels through [the Beddows'] property and onto [the NFA's] property," creating a flooding nuisance which the NFA refuses to abate; the NFA's reckless and negligent conduct violates R.C. 3767.13(C); and that the Beddows have suffered thereby a decrease in the fair market value of their real property, incurred substantial maintenance expenses and will continue to do so, lost business profits and will continue to do so, and have suffered substantial diminution to the use and enjoyment of their property.
On January 17, 1997, a jury found for the NFA, and judgment was entered accordingly. The Beddows appeal, assigning five errors.
 I.
The Beddows' first assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON APPELLANTS' CLAIM FOR RELIEF BASED ON ABSOLUTE NUISANCE PURSUANT TO THE COMMON LAW AND R.C. 3767.13.
The Beddows assert that the trial court erred by failing to give their requested jury instructions on absolute nuisance and the NFA's alleged violation of R.C. 3767.13. A court ordinarily should give requested jury instructions where they are correct statements of the law as applied to the facts in the case and where there is evidence from which reasonable minds might reach the conclusion sought by the instruction. Murphy v. CarrolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591. Our review of the record indicates the trial court properly refused to instruct the jury on these issues.
The Ohio Supreme Court has defined three categories of absolute nuisance: 1) a culpable and intentional act resulting in harm; 2) an act involving culpable and unlawful conduct causing unintentional harm; and 3) a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.Metzger v. The Penn., Ohio Detroit Rd. Co. (1946), 146 Ohio St. 406, paragraph one of the syllabus.
On appeal, the Beddows assert that the NFA acted intentionally by refusing to cut a swale across their property, which would have alleviated the flooding caused by the undisputed insufficiency of flow through the thirty inch pipe running across the NFA's property. The Beddows argue that the NFA's refusal to cut the swale created an abnormally dangerous condition that caused a "lake" to form over the Beddows' property four or five times a year, damaging the Beddows' real property, personal property, and business equipment.
Each of the three categories of absolute nuisance requires that an "act" have been committed by the alleged tortfeasor. The Beddows do not allege that the NFA created the insufficient flow capacity of the thirty inch pipe, which had been installed prior to its purchase of the property, and which caused flooding. Absolute liability does not attach where a defendant has merely failed to abate a condition which he or she has not created. SeeHarkins v. Shelter (July 9, 1986), Summit App. No. 12372, unreported, at 7, fn. 2, citing Prosser, Law of Torts (4 Ed. 1971) 575, Section 87; see, also, Bays v. Kent State Univ. (Ct. Claims, 1997), 86 Ohio Misc.2d 69, 74 (noting that the defendant did not commit any "affirmative acts" contributing to the plaintiff's alleged damages). The Beddows argue that the NFA did create enhanced flooding conditions by filling in a swale that had developed on the surface of the NFA's lot, running across the lot, roughly along the course of the pipe, and emptying into the catch basin at the eastern edge of the NFA property. As recited above, there was conflicting evidence as to whether such a swale even existed. While there was evidence that water flowed across the surface of the NFA property both before and after that alleged filling in of the alleged swale, there was no evidence presented that the aggregate flow across the NFA land was decreased as a result of any alleged changes to the NFA property.
The Beddows also argue that the trial court erred in refusing to give the jury an instruction on R.C. 3767.13(C), which provides, in relevant part, that "[n]o person shall * * * unlawfully divert [a] watercourse from its natural course or state to the injury or prejudice of others." Assuming that the pipe running across the NFA's property constituted a natural watercourse,[1] see Conobre v. Fritsch (1952), 92 Ohio App. 520,524-525, we cannot agree that the NFA's refusal to divert the watercourse by building a swale constitutes an unlawful diversion of a watercourse within the meaning of R.C. 3767.13(C). The Beddows urged that the NFA diverted a "watercourse" by filling in the alleged swale running across the NFA plot. However, "[g]enerally, a swale is not considered to be a watercourse."Frost v. Bank One of Fremont, N.A. (Sep. 28, 1990), Sandusky App. No. S-89-32, unreported. The evidence produced by the Beddows — their own assertions that a 2 foot depression had formed atop the pipe — did not show that this swale met the definition of a watercourse. The Beddows' first assignment of error is overruled.
 II.
The Beddows' second assignment of error states:
 THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT AS A MATTER OF LAW APPELLEE HAD NO DUTY TO REMOVE OR INCREASE THE SIZE OF THE THIRTY INCH PIPE LOCATED ON ITS PROPERTY.
The trial court instructed the jury as follows:
 The defendant, as possessor of land, is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface water to the detriment of others; each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface water is altered thereby, and causes some harm to others. The defendant incurs liability only when his harmful interference with the flow of surface water is unreasonable. You are instructed that the defendant has no duty to remove or increase the size of the 30 inch pipe.
The Beddows argue that the trial court erred by not permitting the jury to decide whether under the circumstances the NFA had the duty to remove or increase the size of the thirty inch pipe. Citing McGlashan v. Spade Rockledge Corp. (1980), 62 Ohio St.2d 55, the Beddows argue that the reasonable use approach requires the jury to balance the foreseeability and gravity of the harm and the practicality of a solution against the utility of the defendant's conduct. Thus, the Beddows conclude, "the jury should have been permitted to determine whether the gravity of the harm coupled with the suggested solution of replacing the pipe with a swale at the cost of $3,000 outweighed the utility of having a marshy grass field and no swale."
The Beddows do not explain how, by leaving in place a pipe that predated their ownership of the property, the NFA interfered with or altered the flow of surface water. Nor do they submit any legal authority in favor of their proposition. What is more, counsel for the Beddows admitted that the NFA has no duty to upgrade the pipe. The Beddows' second assignment of error is overruled.
 III.
The Beddows' third assignment of error states:
 THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE ABOUT STATEMENTS MADE BY APPELLEE'S EMPLOYEES AND AGENTS.
On direct examination, Bill Beddow stated that he had no personal knowledge that the NFA had done anything to maintain the pipe. When asked if he knew whether the NFA had ever tried to inspect or clean out the pipe, Bill Beddow answered "Yeah. Ed Seymore sent his sons down there." This response drew an objection from the NFA, a proffer from the Beddows, and, ultimately, an order from the court sustaining the objection and excluding the testimony. In the proffer, counsel for the Beddows stated that Bill Beddow had seen nothing, but had been told by Ed Seymore that Seymore had sent his sons down to take a look at the pipe, and that the sons had told Seymore that they saw cracks in it.
The Beddows insist that the proffered testimony should have been admitted as an admission by NFA. To qualify as an admission by the NFA, and thereby not be considered as hearsay, the statements by Seymore to Beddow must have been "a statement by [the party's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]" Evid.R. 801(D)(2)(d).
The admission or exclusion of evidence is generally within the sound discretion of the trial court and a reviewing court may reverse only upon the showing of an abuse of that discretion.Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,299, certiorari denied (1992), 506 U.S. 871, 121 L.Ed.2d 146. The trial court queried the Beddows as to the foundation for the statement by Seymore. The trial court concluded that the proffer failed to establish whether Seymore or his sons were employees or agents of the NFA at the times the statements (sons-to-Seymore and Seymore-to-Beddow) were made. On appeal, the Beddows assert the contrary but point to no evidence in the record to the contrary. Because the statements failed to qualify as admissions by the NFA, they were properly excluded as hearsay.[2] The Beddows' third assignment of error is overruled.
 IV.
The Beddows' fourth assignment of error states:
 THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF APPELLANTS' EXPERT, FLETCHER CARR.
The trial court instructed the jury to disregard the testimony of the Beddows' expert, Fletcher Carr. The legal standard involved was derived from Horrisberger v. Mohlmaster
(1995), 102 Ohio App.3d 494, 500, which stated that with respect to damages for restoration of property, plaintiffs are required to present proof of restoration costs and proof of the diminution of the fair market value of their property. The trial court instructed the jury to disregard the testimony of Carr because its deficiencies with respect to the issue of the property's diminution in value rendered speculative the comparison the jury was to make between restoration costs and diminution in value. The trial court noted that Carr: 1) deducted 30 percent of the property's value as representing the period of time during any given year during which the subject property was at risk for floods "as opposed to deducting something which would represent the actual time during which the property was flooded during the year"; and 2) compared the value of the Beddows' property, which lies in a flood plain, with properties that do not, and did not explain why he did so.
The admission or exclusion of expert testimony is generally within the sound discretion of the trial court. Donaldson v. N.Trading Co. (1992), 82 Ohio App.3d 476, 483-484. No abuse of that discretion having been brought to our attention, we overrule the Beddows' fourth assignment of error.
 V.
The Beddows' fifth assignment of error states:
 THE TRIAL COURT ERRED IN ORDERING APPELLANTS TO PAY AS COSTS THE LITIGATION EXPENSES ASSOCIATED WITH APPELLANTS' DEPOSITION OF APPELLEE'S EXPERT WITNESS KENNETH JENSEN.
On February 18, 1997, the trial court granted the NFA's post-trial motion that $227.50 be taxed as costs to the Beddows, with that sum representing the expenses associated with the Beddows' deposition of the NFA's expert, Kenneth Jensen. Because "there is no general statutory authority empowering a trial court to award deposition expenses to a prevailing party," Williamson v.Ameritech Corp. (1998), 81 Ohio St.3d 342, 343, we sustain this assignment of error.
This court has overruled the Beddows' first four assignments of error, and sustained their fifth. This cause is remanded to the trial court for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 Exceptions. _________________________________ WILLIAM R. BAIRD
FOR THE COURT
SLABY, P. J.
DICKINSON, J.
CONCUR.
[1] A watercourse is:
 a stream usually flowing in a particular direction in a definite channel having a bed, banks or sides and discharging into some other stream or body of water. It need not flow continuously, and may some times be dry or the volume of such water course may some times be augmented by freshets or water backed into it by a lake or bay or other extraordinary causes; but so long as it resumes its flow in a definite course in a recognized channel and between recognized banks, such stream constitutes a watercourse.
E. Bay Sporting Club v. Miller (1928), 118 Ohio St. 360, paragraph three of the syllabus; Ritchhart v. Gleason (1996), 109 Ohio App.3d 652,656-657, n. 4.
[2] "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.